LOUIS DANNHAUSER, Appellant, *v.* ROSA WALLENSTEIN,
Respondent.

1. APPEAL — QUESTION FOR REVIEW WHERE ORDER OF APPELLATE
DIVISION IS SILENT AS TO GROUNDS OF REVERSAL — DECISION IN SHORT
FORM. Where the order of the Appellate Division reversing a judg-
ment of the Special Term is silent as to its grounds, the reversal must be
presumed to have been upon questions of law. (Code Civ. Pro. § 1338.)
And where the Special Term decision is in the short form, this court's
review is confined to the question whether, in any view of the facts proved,
the judgment can be sustained.

2. INSURANCE — LIFE POLICY FOR BENEFIT AND USE OF WIFE NOT
ASSIGNABLE WITHOUT WRITTEN CONSENT OF HUSBAND. Nothing short
of a written consent by a husband to an assignment by his wife of a policy
of insurance upon his life for her use and benefit will amount to a com-
pliance with chapter 248 of the Laws of 1879, making such policies
"assignable by said wife with the written consent of her husband."

3. POLICY PAYABLE TO HUSBAND'S LEGAL REPRESENTATIVES NOT ONE
FOR THE BENEFIT AND USE OF HIS WIFE. A policy of life insurance
payable to the legal representatives of the insured cannot be regarded as
one for the benefit and use of his wife within the meaning of chapter 80
of the Laws of 1840, or of chapter 248 of the Laws of 1879.

4. PAID-UP POLICY PAYABLE TO WIFE OF INSURED — WHEN A CON-
TINUATION OF ORIGINAL POLICY — WHEN ASSIGNABLE WITHOUT WRIT-
TEN CONSENT OF HUSBAND. A "paid-up" policy payable to the wife of
the insured, taken out by her in lieu of the original policy under a
clause conferring that right, is not a new contract, but a continuation of
the original, and is assignable by the wife without the written consent
of her husband.

*Dannhauser* v. *Wallenstein*, 52 App. Div. 312, reversed.

(Argued December 11, 1901; decided December 20, 1901.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered June
14, 1900, reversing a judgment in favor of plaintiff entered
upon a decision of the court on trial at Special Term and
granting a new trial.

On the 30th of June, 1873, the New York Life Insurance
Company issued to one Moses Wallenstein a policy of insur-

ance upon his life for $10,000, payable upon his death to his legal representatives. The policy was known as a ten-payment life policy and contained the following provision : " If after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premiums when due, then, notwithstanding such default; the company will grant a ' paid-up ' policy (payable as above) for as many tenth parts of the sum above insured as there shall have been complete annual premiums paid hereon when default in the payment of premiums shall first be made: Provided, that this policy shall be transmitted and received by this company and application made for such paid-up policy within one year after default in the payment of premium hereon shall first be made."

This policy was issued pursuant to a written application signed by the insured and dated the 19th of June, 1873. On January 11th, 1877, Moses Wallenstein, by a written instrument, assigned said policy of insurance to his wife, Rosa Wallenstein, the defendant herein. On or about June 18th, 1878, the defendant surrendered the policy to the New York Life Insurance Co., and in lieu thereof obtained a " paid-up " policy upon the life of her husband, said Moses Wallenstein, for $4,105, payable to " Rosa Wallenstein,' wife of said Moses Wallenstein, assignee, or her legal representatives." By the terms of the latter policy it was issued in consideration of the statements and representations submitted to the officers of said insurance company at its home office in the city of New York, and contained in the written application therefor, " and of the value acquired under policy No. 99,047, which policy has been surrendered to the company and canceled."

On the 12th of September, 1879, Rosa Wallenstein, the defendant, by a written instrument, assigned and transferred said paid-up policy to one Isaac Hamburger, and he in turn, by an instrument in writing dated Feb. 13th, 1895, transferred the same to his wife, Fannie Hamburger. On the 25th of October, 1895, said Fannie Hamburger, by an instrument in

writing, assigned said policy to Louis Dannhauser, the plaintiff herein.

On the 6th of January, 1898, Moses Wallenstein, the insured, died in the city of New York. No question is made as to the form of any of the assignments, and it is expressly conceded that duplicates were filed with the insurance company as required by the terms of each of the policies. The assignment from the defendant to Isaac Hamburger was made in consideration of $3,000 paid by the latter to the defendant's husband, to whom the original policy of insurance and said assignment were delivered and by whom they were given to Hamburger. The consideration for the assignment of the policy to plaintiff was part payment of an indebtedness of over $8,000, owing by Hamburger to him, on which the value of the policy, $4,105, was applied.

The plaintiff originally brought this action against the New York Life Insurance Co. to recover the amount of the policy held by him under said assignment. The defendant also made a claim to the proceeds of the policy. Thereupon the insurance company paid the moneys due upon the policy into court and procured the defendant to be substituted in its place.

*John Frankenheimer* and *Nathan Ottinger* for appellant. The order of reversal being silent as to the grounds, this court must presume that the reversal was upon questions of law, and that all the facts warranted by the evidence and necessary to support the judgment are impliedly found by the trial court. (*Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 463; *Bomeisler* v. *Forster*, 154 N. Y. 229; *N. H. Co.* v. *Bement & Sons*, 163 N. Y. 505; *Trustees of Amherst College* v. *Ritch*, 151 N. Y. 282; *People* v. *A. Ry. Co.*, 160 N. Y. 235; *Gannon* v. *McGuire*, 160 N. Y. 479.) The original policy was not a policy issued upon the life of the husband for the benefit of his wife under the act of 1840, and was freely assignable by him. Upon his assignment of this policy

to the defendant, the same became her absolute property, and as such was freely assignable by her. The paid-up policy, being made to her as assignee of the original policy and pursuant to the provisions of the original policy, is but a continuation of the latter, and neither increased nor diminished the property rights of the defendant in the insurance. (*Sulz* v. *M. R. F. L. Assn.*, 145 N. Y. 563; *N. Y. Mut. L. Ins. Co.* v. *Armstrong*, 117 U. S. 591; *Steinback* v. *Diepenbrock*, 158 N. Y. 24; *Leonard* v. *Clinton*, 26 Hun, 288; *Elliot's Appeal*, 50 Penn. St. 75; *McCutcheon's Appeal*, 99 Penn. St. 137; *Central Bank* v. *Hume*, 128 U. S. 195; *People* v. *Globe Mut. L. Ins. Co.*, 15 Abb. [N. C.] 75; *C. M. L. Ins. Co.* v. *Van Campen*, 11 N. Y. Supp. 103.) It was error for the Appellate Division to hold that Rosa Wallenstein, the assignee of the original policy, by making the paid-up policy payable to herself, thereby *ipso facto* made the paid-up policy a non-assignable wife's policy under the act of 1840. (*B. L. Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Carpenter* v. *Negus*, 17 Misc. Rep. 172; *Cole* v. *Ins. Co.*, 63 How. Pr. 442; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482.) To construe the statute of 1879 as applicable to a paid-up policy like the one in suit would render the statute unconstitutional. As the statute in question does not expressly embrace such a paid-up policy the court should adopt the rule of excluding from the operation of the statute a case which is not within the express terms thereof, and which, if deemed included therein, would render it unconstitutional. (*Central Bank* v. *Hume*, 128 N. Y. 195; *Elliot's Appeal*, 50 Penn. St. 75; *McCutcheon's Appeal*, 99 Penn. St. 137; *Leonard* v. *Clinton*, 20 Hun, 288; *Smillie* v. *Quinn*, 90 N. Y. 492; *Cole* v. *K. L. Ins. Co.*, 63 How. Pr. 442; *Cooley* on Const. Lim. 344; *Westervelt* v. *Gregg*, 12 N. Y. 202; *Matter of R. Bank*, 22 N. Y. 67; *People ex rel.* v. *Terry*, 108 N. Y. 1; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42.) The public policy which makes a policy issued upon the life of the husband for the benefit of the wife non-assignable

by her is limited to policies originally issued in this form under the act of 1840. (*Steinback* v. *Diepenbrock*, 158 N. Y. 24; *Olmsted* v. *Keyes*, 85 N. Y. 593; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 152; *Anderson* v. *Goldsmidt*, 38 Hun, 360; 103 N. Y. 620; *Living* v. *Dornett*, 26 Hun, 150; *Brummer* v. *Cohn*, 86 N. Y. 11; *Miller* v. *Campbell*, 140 N. Y. 457; *T. Ins. Co.* v. *Healey*, 25 App. Div. 53; *Steinhausen* v. *P. M. A. Assn.*, 59 Hun, 336; *Holmes* v. *Gilman*, 138 N. Y. 369.) There was such a consent by the husband to his wife's assignment of the policy as constituted, under the circumstances of this case, a compliance with the requirements of the statute. (*Nat. H. Co.* v. *Bement & Sons*, 163 N. Y. 505; *David Kennedy Corp.* v. *Kennedy*, 165 N. Y. 353; *Trustees of Amherst College* v. *Ritch*, 151 N. Y. 282; *Marden* v. *Dorthy*, 160 N. Y. 46; *C. M. L. I. Co.* v. *Van Campen*, 11 N. Y. Supp. 103; *Anderson* v. *Goldsmidt*, 103 N. Y. 617; *James* v. *Patten*, 6 N. Y. 9; *Drury* v. *Young*, 58 Md. 542; *Schneider* v. *Norris*, 2 M. & S. 286; *Saunderson* v. *Jackson*, 2 B. & P. 239.) The delivery of the paid-up policy to Hamburger upon the payment by him of $3,000 to defendant's husband can be sustained as a valid pledge of the policy, creating an equitable lien thereon for the amount so paid by Hamburger. (*Marcus* v. *St. L. M. L. Ins. Co.*, 68 N. Y. 625; *T. Ins. Co.* v. *Healey*, 19 Misc. Rep. 584.) The Statute of Limitations bars the defendant's claim. (*Frank* v. *M. L. Ins. Co.*, 102 N. Y. 266; 12 Daly, 267; *Brick* v. *Campbell*, 122 N. Y. 337; *Henry* v. *Root*, 33 N. Y. 537; *C. M. L. Ins. Co.* v. *Van Campen*, 11 N. Y. Supp. 603; *Aitken* v. *Mass. Ben. Assn.*, 13 N. Y. Supp. 579; *Anderson* v. *Roberts*, 18 Johns. 513; *Allis* v. *Billings*, 47 Mass. 417; *State* v. *Richmond*, 26 N. H. 232; *Van Deusen* v. *Sweet*, 51 N. Y. 378.) The assignments through which the plaintiff claims title to the paid-up policy were given for a valuable consideration, and the plaintiff holds the position of a *bona fide* purchaser for value of the paid-up policy in question. (*Moore* v. *Met. Nat. Bank*, 55 N. Y. 41; *McNeil* v. *T. Nat. Bank*, 46 N. Y. 325;

*Fairbanks* v. *Sargent*, 104 N. Y. 116; *M. Bank* v. *Weill*, 163 N. Y. 490; *Eno* v. *Crooke*, 10 N. Y. 60; *Richardson* v. *Mead*, 27 Barb. 178; *Belden* v. *Meeker*, 47 N. Y. 307; *Hamer* v. *Sidway*, 124 N. Y. 538.)

*Martin Paskusz, Henry L. Cohen* and *William S. Gordon* for respondent. The finding of the court below that the paid-up policy is a wife's policy, under the act of 1840, is a finding of fact conclusive upon this appeal. (*Griswold* v. *Sawyer*, 125 N. Y. 411.) Whether the finding of the Special Term be deemed a finding of fact or a conclusion of law, the paid-up policy in suit is nevertheless a wife's policy. The alleged assignment thereof was not accompanied by the written consent of the husband, and, therefore, was in conflict with chapter 248, Laws of 1879, and is void. (*Eadie* v. *Slimmon*, 26 N. Y. 9; *Wilson* v. *Lawrence*, 76 N. Y. 585; *Brummer* v. *Cohn*, 86 N. Y. 11; *Griswold* v. *Sawyer*, 125 N. Y. 411; *McCord* v. *McCord*, 40 App. Div. 275; *Frank* v. *M. L. Ins. Co.*, 102 N. Y. 274; *Baron* v. *Brummer*, 100 N. Y. 372; *Amberg* v. *M. L. Ins. Co.*, 56 App. Div. 343; *Romaine* v. *Chauncey*, 129 N. Y. 566; *Atty.-Gen.* v. *C. L. Ins. Co.*, 91 N. Y. 647.) The respondent cannot be estopped from claiming that the assignment was invalid, nor does the Statute of Limitations bar her claim. (*Brick* v. *Campbell*, 122 N. Y. 337; *Wilson* v. *Lawrence*, 13 Hun, 238.) The alleged assignment of the paid-up policy by Rosa Wallenstein to Isaac Hamburger was invalid because it was not supported by any consideration, and consequently the subsequent assignments from Hamburger to his wife and from the wife to the plaintiff are likewise invalid. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Cutts* v. *Guild*, 57 N. Y. 229; *Ingraham* v. *Disborough*, 47 N. Y. 421; *McNeil* v. *T. Nat. Bank*, 46 N. Y. 325; *Fairbanks* v. *Sargent*, 104 N. Y. 108; *T. Ins. Co.* v. *Healey*, 86 Hun, 524.) The delivery by the defendant's husband of the paid-up policy to Hamburger cannot operate as a pledge of the policy, nor has this court the power to find that the delivery of the policy when made was intended to be

made as a pledge. (*Toplitz* v. *Bauer*, 161 N. Y. 325.) The construction placed upon the statute of 1879 by the Appellate Division does not render that statute unconstitutional for the reason that prior to the act of 1879 the defendant was powerless to assign the paid-up policy in suit and her power to do so was derived only by the terms of that act. (*Romaine* v. *Chauncey*, 129 N. Y. 566; *Baron* v. *Brummer*, 100 N. Y. 372; *McCord* v. *McCord*, 40 App. Div. 275; *Eadie* v. *Slimmon*, 26 N. Y. 9; *Dodge* v. *Cornelius*, 168 N. Y. 242; *Purdy* v. *E. R. R. Co.*, 162 N. Y. 51; *Vose* v. *Cockcroft*, 44 N. Y. 415.; *Delaney* v. *Brett*, 51 N. Y. 79.)

WERNER, J. The equities in favor of the plaintiff are so clear and strong that they should be upheld unless they conflict with some settled and inflexible rule or principle of law. The assignment from the defendant to Hamburger was executed in September, 1879, or nearly twenty years before the death of the defendant's husband. It was made upon a consideration of $3,000, paid by Hamburger to the defendant's husband. The subsequent assignment to the plaintiff was made in part payment of a claim of $8,000 and upwards, which the latter held against Hamburger. If the assignment to Hamburger is void, it follows that the assignment to the plaintiff is equally invalid, since he took no better title than his assignor. If these assignments are held to be void, the plaintiff may possibly have his remedy over against Hamburger, but the latter will be remediless, as his claim is clearly barred by the Statute of Limitations.

Before proceeding to examine the statutes and decisions under which the defendant seeks to repudiate her assignment to Hamburger, let us briefly consider the scope and effect of the judgments below. The decision of the trial court was in the so-called short form and is, therefore, fortified by the presumption that all the facts warranted by the evidence and necessary to support the judgment were impliedly found by the court. (*Bomeisler* v. *Forster*, 154 N. Y. 229; *Trustees, Amherst College* v. *Ritch*, 151 id. 282; *Petrie* v. *Trustees*,

*Hamilton College,* 158 id. 463.)   The order of the Appellate
Division reversing the judgment of the trial court is silent as
to the grounds of reversal, and this court is, therefore, bound
to presume that the reversal was upon the law.  (Code Civ.
Pro. § 1338.)   Thus the facts stand approved by the court
below and our right of review is confined to the question
whether, in any view of the facts proved, the plaintiff was
entitled to the relief awarded him by the trial court.   (*National
Harrow Co.* v. *Bement & Sons,* 163 N. Y. 509.)

This question embraces several others which we will now
consider.   Defendant claims that the assignment to Ham-
burger is void under chap. 248, Laws of 1879, which became
a law on May 5th of that year and provides that " All policies
of insurance heretofore or hereafter issued within the state of
New York upon the lives of husbands for the benefit and use
of their wives, in pursuance of the laws of the state, shall be,
from and after the passage of this act, assignable by said wife
with the written consent of her husband ; or in case of her death
by her legal representatives, with the written consent of her hus-
band, to any person whomsoever, or be surrendered to the com-
pany issuing such policy, with the written consent of the hus-
band."   The learned trial court found, and the fact is, that the
husband never did consent in any formal writing to the defend-
ant's assignment of said policy to Hamburger, but held that
the delivery of said policy and assignment by the defendant
to her husband, and his delivery thereof to Hamburger,
coupled with the receipt of the consideration therefor by the
husband, was a substantial compliance with the law above
referred to.   The learned Appellate Division took the con-
trary view and held that nothing short of a written consent
by the husband would be a compliance with the terms of the
statute.   We concur in this view of the Appellate Division,
if the statute above quoted applies to the policy in suit ; but
we think it does not apply.

It is to be observed that the language of the statute is that
all " policies of insurance   *   *   *   upon the lives of hus-
bands *for the benefit and use of their wives* " are made assign-

able in the manner therein prescribed. The original policy, for which the one in suit was substituted, was payable to "Moses Wallenstein's representatives," and was, therefore, not a "wife's" policy unless this case falls within the rule laid down in *Griswold* v. *Sawyer* (125 N. Y. 414). The contest in that case was between the widow and children of the insured, on the one side, and his administrator on the other, for the possession of a paid-up policy of insurance payable to the "legal representatives" of Griswold, the insured. This policy was issued in the lifetime of Griswold upon the surrender of a prior policy, but there was no proof showing who were the beneficiaries named therein. Under these conditions it was held proper to consider the circumstances of the insured and the conditions co-existing with the issuance of the paid-up policy in the effort to determine the meaning of the words "legal representatives." This court there said : "It is undoubtedly true that the strict, technical *prima facie* meaning of these words is administrators or executors, and that they must always have that meaning unless it can be seen that they were used in a different sense. That these words have sometimes been used in statutes and decisions in a different sense cannot be doubted." (Citing cases.) In the case at bar the husband and wife have given practical construction to the words "personal representatives" used in the original policy. On the 11th of January, 1877, the husband assigned the same to his wife "or her executors, administrators and assigns." Thus the rule invoked in *Griswold* v. *Sawyer* (*supra*) does not apply.

It is further urged on behalf of the defendant that even if the original policy was not a "wife's" policy, the paid-up policy which, it is claimed, was a new and independent contract, was expressly made payable to "Rosa Wallenstein, wife of Moses Wallenstein, assignee, or her legal representatives," and thus came within the provisions of the statute of 1879. If the premise that the second policy was a new and distinct contract is sound, the conclusion must follow that it was a wife's policy. We are, however, of the opinion that the

paid-up policy was not a new contract. It was simply a continuation of the original contract under the option which gave the holder thereof the right, after two or more annual premiums had been paid, to cease paying the annual premiums and take a paid-up policy in exchange for the first one. It was a change in the mere form of the contract expressly provided for by its own terms. It is true that the first policy, the original evidence of the contract between the insured and the company, was "surrendered to the company and canceled" when the paid-up policy was issued, but this was simply a part of, and in compliance with, the terms of the original contract. The contract was continued as it provided that it might be, in the form of a paid-up policy, such as was accepted by the defendant. It was not a modification, but a fulfillment of the original contract.

In *People* v. *Globe Mutual Life Ins. Co.* (15 Abb. N. C. 78; affd., 96 N. Y. 675, upon the opinion of the referee) the converse of the question now before us was decided, the court there holding that a policy originally issued for the benefit of the wife was not abrogated by its exchange for a paid-up policy, procured by the husband without her consent and by him subsequently surrendered to the company. The language of the referee, approved by this court, was as follows: "The paid-up policy, however, was issued in continuation of the first policy, and for its then value, and the company entered into a new covenant that no more premiums should be paid. In one sense it was the first policy continued; it was not an entire cancellation of the contract of insurance, as was the surrender of the paid-up policy." In *Conn. Mut. Life Ins. Co.* v. *Van Campen* (11 N. Y. Supp. 103) the former General Term of the first department held that the surrender of an original policy for one that was "paid up" did not create a new contract, but was substantially a continuation of the old one, and in *McDonnell* v. *Alabama G. L. Ins. Co.* (85 Ala. 412), which is a well-considered case, the same conclusion was reached. The same doctrine was clearly enunciated in *Barry* v. *Brune* (71 N. Y. 261).

Nor does the fact that the paid-up policy was issued at the instance of the wife and was payable to her or her legal representatives change the contract. If the original policy was not a " wife's " policy, the defendant's only title to or right therein was derived through the assignment of her husband to her. By virtue of that assignment she became the owner thereof (*Trav. Ins. Co.* v. *Healey*, 25 App. Div. 61; affd., 164 N. Y. 607), and hence she was the only person to whom the paid-up policy could have been issued.

It remains to be seen whether the views above expressed are in conflict with any of the statutes enacted prior to 1879, or with any of the previous decisions of this court. We will first consider the statutory history of the subject. In 1840 the legislature passed chapter 80 of the laws of that year, entitled " An act in respect to insurances for lives for the benefit of married women." It provided that (§ 1) " It shall be lawful for any married woman, by herself, and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable, by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars. (§ 2) In case of the death of the wife, before the decease of her husband, the amount of the insurance may be made payable after her death to her children for their use, and to their guardian, if under age."

It will be observed that the exemption of this act extended to all insurance effected by or for a wife upon the life of her husband when the annual premiums paid did not exceed three hundred dollars. In 1858 this act was amended (Ch. 187) by providing that the " exemption shall not apply where the amount of premium annually paid *out of the funds or property of the husband* shall exceed three hundred dollars."

14

Under the statutes referred to, the right of the wife to the proceeds of an insurance policy was contingent upon her surviving her husband, but in 1866 the statute was further amended by providing (Ch. 656), "*in case of her surviving such period or term,* the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her to and for her own use, free from the claims of the representatives of the husband or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed three hundred dollars."

In 1870, by ch. 277, the statute was again amended by providing, "But, when the premium paid in any year out of the property or funds of the husband *shall exceed five hundred dollars, such exemption from such claims shall not apply to so much of said premium so paid as shall be in excess of five hundred dollars, but such excess, with the interest thereon, shall enure to the benefit of his creditors.*"

It will be noted, in passing, that up to 1870, the year in which the amendment last quoted was passed, there had been no statutory provision for the disposition, by the wife, of life insurance policies issued for her benefit. In 1873 the legislature enacted ch. 821, to amend the statutes of 1858 and 1870, and section 2 thereof provided first, for the manner in which "any policy in favor of a married woman, or of her and her children, or assigned in her, or in her and their favor" could be surrendered to the company issuing the same. It further provided: "And such married woman may, in case she have no child or children born of her body, or any issue of any child or children born of her body, dispose of such policy in and by a last will and testament, or any instrument in the nature of a last will and testament, or by deed duly executed and acknowledged before an officer authorized to take acknowledgments of deeds, in the same manner as required by law to pass her dower right in lands of her husband, which disposition lawfully made shall invest the person or persons to whom such policy shall have been so bequeathed,

or granted and conveyed, with the same rights in respect thereto as such married woman would have had in case she survived the person on whose life such policy was issued, and such legatee or grantee shall have the same right to dispose of such policy as herein conferred on such married woman."

This was the state of the statute law down to 1879, when the legislature passed ch. 248 of the laws of that year, above referred to and by virtue of which a wife may, with the written consent of her husband, assign a policy of insurance issued upon his life for her benefit. It will thus be seen that the act of 1873, which gave a wife who had no children or descendants of such children, the right to dispose of life insurance policies by will or deed, referred in express terms to policies originally issued for her benefit " or assigned in her  *  *  * favor," while the statute of 1879, giving the wife the right to *assign* policies of insurance upon the life of the husband, relates only to such as are issued " *upon the lives of husbands for the benefit and use of their wives.*"

Let us now examine the authorities to see if they prohibit the view that a policy of insurance procured by a husband payable to his legal representatives, and by him assigned to his wife, is transferable by her like any other property that she may own. In this connection we must bear in mind that the rule that life insurance policies issued upon the lives of husbands for the benefit of their wives were not assignable was not derived from any provision of the statute of 1840, or of any of its amendments, but was established by the courts of this state and has been steadily adhered to since its first promulgation in *Eadie* v. *Slimmon* (26 N. Y. 9). In that case this court said : " The provision of the statute (1840) is special and peculiar, and looks to a provision for a state of widowhood, and for orphan children; and it would be a violation of the spirit of the provision to hold that a wife, insured under this act, could sell or traffic with her policy as though it were realized personal property or an ordinary security for money." In that case and in all the cases following it, the policy was either procured by the husband upon his life and payable to

the wife, or taken out by the wife and payable to herself. (*Barry* v. *Eq. Life Ass. Soc'y*, 59 N. Y. 587; *Wilson* v. *Lawrence*, 76 id. 585; *Brummer* v. *Cohn*, 86 id. 11; *Smillie* v. *Quinn*, 90 id. 492; *Baron* v. *Brummer*, 100 id. 372; *Frank* v. *Mut. Life Ins. Co.*, 102 id. 266.) Since the inference of a legislative intent to make non-assignable a policy of insurance upon the life of a husband for the use or benefit of a wife, issued prior to the passage of the act of 1879, rests wholly upon judicial construction, and not upon the express terms of the statute of 1840, it should not, at this late day, be further extended by construction. The act of 1879 in terms refers to the kinds of life insurance policies which, prior to its passage, were held non-assignable, and such policies, and such only, require the written consent of the husband to an assignment by the wife. This conclusion seems to be in harmony with the previous decisions of this court, and is also consonant with the statutes of the state under which a married woman may hold and transfer her own property as though she were unmarried.

We, therefore, hold that the policy in suit is not within the provisions of the acts of 1840 and 1879, and that the defendant's assignment thereof without the written consent of her husband was valid. The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs.

GRAY, LANDON and CULLEN, JJ., concur; PARKER, Ch. J., not sitting; O'BRIEN and HAIGHT, SJ., dissent.

Ordered accordingly.