JOHANNA LESEM, Respondent, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

First Department, October 30, 1914.

Principal and agent — provisions of power of attorney construed — insurance — action on life insurance policy — set-off — loan to agent of beneficiary procured by forging the names of the insured and the beneficiary.

Provisions of a power of attorney executed by the beneficiary of a life insurance policy to her son conferring upon him authority to transact certain business affairs in her behalf, examined and *held*, not to confer authority to pledge the policy of insurance for a loan.

Where, in an action on a policy of life insurance, it appears that the plaintiff's son, without authority, had pledged the policy with the defendant as security for a loan which he had devoted to his personal use; that the defendant supposed that it was dealing directly with the plaintiff and her husband, and in making the loan relied upon their signatures which had been forged by the son, it cannot set off the amount of the loan against the sum due on the policy.

As the plaintiff had no power to assign the policy without her husband's consent the assignment effected by forging his name was void.

APPEAL by the defendant, the Mutual Life Insurance Company of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of January, 1914, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 6th day of January, 1914, denying the defendant's motion for a new trial made upon the minutes.

*Julien T. Davies, Jr.*, for the appellant.

*John Frankenheimer*, for the respondent.

Judgment and order affirmed, with costs, on opinion of GREENBAUM, J.

Present — INGRAHAM, P. J., LAUGHLIN, SCOTT, DOWLING and HOTCHKISS, JJ.

The following is the opinion of the court below:

GREENBAUM, J.:

This is an action to recover on a policy of life insurance for $10,000 issued by defendant upon the life of Solomon J. Lesem

and payable to the plaintiff, his wife. Solomon J. Lesem, the insured, died on the 9th day of March, 1911, at Worms, Germany. In the year 1902, owing to the ill health of the insured, he and his wife left the United States to sojourn at health resorts in the Empire of Germany, having first secured from the defendant a written waiver of the restrictions imposed by the policy upon residence and travel. Prior to her departure the plaintiff executed and delivered to her son, William W. Lesem, a written power of attorney, conferring upon him authority to transact certain business affairs in her behalf. On or about March 15, 1910, without the knowledge or consent of plaintiff or her husband, William W. Lesem applied at the office of the defendant for a loan of $6,374 upon the policy in suit, and the defendant delivered to him a loan note application, at the foot of which was printed the following: "Loan will not be made unless this note is properly executed. See instructions printed on reverse side." Among the instructions referred to the following appear: "Signatures by an attorney in fact will not be accepted. Each party to the note must execute the note personally.  *  *  *  When the policy is in favor of or has been assigned to insured's wife the note must be executed by the insured and the wife." On or about the 21st day of March, 1910, William W. Lesem presented himself at the office of the defendant and delivered to it the loan note application, purporting to be signed by the insured, Solomon J. Lesem, the plaintiff, and a witness named H. B. Drey. Thereupon the defendant delivered to him its check for $5,963, drawn to the order of Solomon J. Lesem and Johanna Lesem, such sum representing the amount of the loan, less the premium of $203.90 and of $206.50 interest in advance on the loan note. Thereafter William W. Lesem indorsed the check in the names of Johanna and Solomon J. Lesem, together with his own name, deposited it to the credit of his individual bank account and kept the proceeds for his own purposes. In December, 1910, plaintiff returned to New York and within a week thereafter William W. Lesem died. It is undisputed that the defendant was ignorant of the existence of the power of attorney and of the fact that William W. Lesem was attempting to act in the transaction as the agent of the plaintiff, and that in accepting

the loan note it relied upon the signatures subscribed to the note as the personal signatures of the plaintiff and her husband. It is true that if the defendant had dealt with William W. Lesem as an agent it might have protected itself by showing that such agent had apparent power to execute the transaction upon plaintiff's behalf. (*North River Bank* v. *Aymar*, 3 Hill, 262; *Hambro* v. *Burnand*, L. R. [1904] 2 K. B. 10, 19.) But it did not deal with the plaintiff as agent, was ignorant of the existence of any agency and assumed that it was dealing directly with the plaintiff and her husband, and parted with its money upon the faith that the signatures upon the note were their personal, genuine signatures. Under these circumstances the defendant, in order to maintain its defense, must show actual authority in the agent to execute the particular transaction in question, to wit, pledge his principal's property for a loan of money for his own benefit. The learned counsel for defendant evidently recognizes that defendant's right to set off the amount loaned upon the policy against the sum due must rest upon his successful contention that William W. Lesem had the inherent authority under the power of attorney to pledge the policy for the loan in question. Unless, then, the power of attorney as between its creator and her appointee conferred upon the latter the absolute right to hypothecate the policy for his benefit and to her injury, the defendant cannot shift upon the plaintiff legal responsibility for the fraudulent act of her son. Fairly summarized, the power of attorney provides that William W. Lesem may " collect  *  *  *  and get acquittance for all moneys  *  *  *  debts, demands, securities, stocks, bonds and all forms and kinds of property whatsoever, which are or shall be due, owing or belonging to me or in or to which I may have any right, title and interest, to invest and reinvest the same, to collect and receive the income, interest and profits thereof, and to give, sign, execute and deliver in my name or in the name of my said attorney all checks, drafts, acknowledgments, agreements and all other instruments in writing of every kind and description as to my said attorney may seem proper or necessary for the effectuating and consummation of any investment or any matter or thing for my benefit or use, or

for any purpose whatsoever, and to sign, indorse any check and draw the same upon any and every bank * * * or depository * * * in which or with whom I * * * may have any moneys or funds or any drafts or * * * instruments to effectuate such purpose; to enter into or take possession of any and all lands, tenements or hereditaments to me belonging or in or to the possession of which I may become entitled * * *," and to let, lease and receive proceeds of any sale thereof, execute and deliver any agreements or writings and commence and prosecute judicial proceedings with respect thereto. By a clause at the end of the power it is provided that the attorney may execute and perform all acts and deeds which shall be expedient or necessary in the premises, and that it is "the intention and meaning of these presents to confer upon my said attorney power and authority to do, perform and execute every act and deed, whether herein enumerated or not, that I might or could do if personally present concerning, respecting or pertaining to my affairs, or to my property of every kind and description." It is apparent from an examination of the language of the power that no specific authority to pledge the plaintiff's property or to borrow money is conferred upon the agent. Such authority, if it exists, must, therefore, be found in the general language employed or implied as necessary to the execution of the express powers granted. (*Craighead* v. *Peterson*, 72 N. Y. 279.) It cannot be said that the power of borrowing money or the pledging of the property was necessary to the execution of any of the specific powers conferred. The concluding paragraph is somewhat unusual in character and apparently confers broad powers upon the attorney, but was not this sweeping power nevertheless intended to be limited to unnamed acts that might arise in connection with some of the matters specifically enumerated therein? In MacKenzie on Powers of Attorney (1913) the English rule is stated as follows (p. 33): "If any special powers are meant to be included in the instrument they should be specifically set out, and not left to be connoted by any general clause, for the meaning of general words in a power of attorney is restricted by the operative clause, and it is an invariable rule that by such general words the donor must be held to confer on the donee only such powers, not specifically mentioned,

as are absolutely necessary for the effective doing of the act for which the power was primarily given (citing cases) * * *. No matter how general the language may be, or how wide its apparent sweep, it will be presumed by the courts to be infused with the will of the principal to execute only the specific acts expressly mentioned in the power, and such other acts as may be requisite for the complete fulfillment of the principal's declared intentions, that is, to do those ancillary acts which it is natural to suppose the principal himself would do to achieve his purpose." And the same author says (p. 37): " The courts have been uncompromising on the point that the attorney must not borrow without express authority." Our courts have recognized the correctness of the rule substantially as stated by MacKenzie, *supra*. (*Holtsinger* v. *Nat. Corn Exchange Bank*, 1 Sweeny, 64; affd. by the Court of Appeals, 3 Alb. L. J. 305; 40 How. Pr. 720.) Considered in the light of the recognized canons of interpretation, it seems clear that the general language of the power cannot be construed as conferring upon the agent power to pledge plaintiff's property for a loan of money. The structure of the instrument and the terms therein employed directly contradict the assumption of a grant of general and unrestricted authority to do any act that the plaintiff might do if personally present. Indeed, if such had been her intention, no enumeration of specific powers would have been necessary or appropriate to the desired end. Phrases may occur in the instrument which, when isolated from their general text, tend to support a broader construction, but the controlling aim and purpose must be ascertained from a consideration of the entire language of the power, and not from detached expressions, severed from their natural connection. The defendant relies specially upon the language of the power providing that the agent may execute all checks, drafts and other instruments for any purpose whatsoever, as well as upon the general grant of authority to execute every act and deed, whether enumerated therein or not, pertaining to plaintiff's affairs. But these phrases, when read in their proper relation to the subject-matter and context of the instrument, must be held to confer power to perform only such acts as are necessary to the execution of the specific authority vested in the agent, and pledging the

policy was not one of the specific powers conferred. But independent of and in addition to the foregoing reasons the rule is well settled that no inference may be drawn from the language of a power that it conferred the right upon the attorney to hypothecate the property of the principal for his own use. The recent case of *Porges* v. *U. S. Mortgage & Trust Co.* (203 N. Y. 181, 189, 190) discusses this rule. In that case it was said that assuming power was conferred upon the agent to indorse checks in the name and behalf of the principal, his indorsement of a check " for his personal use and gain was not within that power." Says the court at page 190: "A power to act for another, however general its terms, or wide its scope, presupposes integrity and faithfulness in its exercise and cannot be enlarged by implication or construction to the justification of a diversion to the use of the agent of moneys or property subject to the agency. Manifestly this instrument did not transfer to Hoyt the ownership of the property to which it related. By virtue of it Hoyt was the plaintiff's attorney or agent with the powers it contained and for the purposes it prescribed. The law will not permit an attorney or agent under color of the authority bestowed by his principal to apply the property of that principal to his own use. That is a breach of trust which a court will not sanction or tolerate. (*Robinson* v. *Chemical National Bank*, 86 N. Y. 404; *Wright* v. *Cabot*, 89 N. Y. 570; *Kern's Estate, Gilpin's Appeal*, 176 Penn. St. 373.)" There is also much force in the contention that the plaintiff had no power to assign the policy without her husband's consent and that any assignment without such consent would be void. (*Dannhauser* v. *Wallenstein*, 169 N. Y. 199; *Brummer* v. *Cohn*, 86 id. 11.) The signatures of plaintiff's husband to the instruments upon which defendant made the loan were unquestionably forgeries. It, therefore, follows that the husband's consent to the assignment was not procured and there was no assignment of the policy. The defendant cannot recoup itself for the money fraudulently obtained from it by plaintiff's son by setting it off against the sum due on the policy. There must be judgment for the plaintiff as prayed for.