### GRIFFIN v. McCOACH et al.

No. 9652.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1940.

Rehearing Denied Jan. 14, 1941.

C. J. Shaeffer, of Dallas, Tex., for appellant.

Chester F. Clark, of Fort Worth, Tex., and Carl B. Callaway, Frank C. Brooks, and Pat H. Candler, all of Dallas, Tex., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a contest over the proceeds of an insurance policy issued on the life of Colonel Robert D. Gordon. John D. McCoach, as trustee for the men who organized the Middletown Tex Oil Syndicate and their assignees, claims the money as the beneficiary named in the policy; J. Rob Griffin, the administrator of the decedent's estate, claims a part of it in behalf of the heirs at law of Gordon. The insurance company, by interpleader, paid the amount due into the registry of the court, and has no interest in the controversy.

The issues presented on appeal can best be understood after a statement of the history of the policy. Colonel Gordon was a promoter during the beginning of the oil boom in Texas. He persuaded a group of seven men in the State of New York to furnish money for his ventures in Texas, both to him personally and to his promotional enterprises. To secure these advances, a term insurance policy for $50,000 was purchased by the group on the life of Gordon. They then organized the Middletown Tex Oil Syndicate for the purpose of paying the premiums on the policy, and the syndicate was named as beneficiary. In 1924, the Middletown Company dissolved, and its members formed a new association called Protection Syndicate, which continued to pay the premiums and to make advances to Gordon. The policy was changed, with the consent of Gordon, to designate the individual members of the syndicate as beneficiaries in the place of the Middletown Company.

Within seven years from the date the policy was issued, it was converted into a whole life policy. The right to convert was given by a provision in the original policy, but the form of the new policy was originated by the insurer after the original policy was issued. Both policies allowed the insured the right to change the bene-

ficiary at any time, by written application accompanied with a surrender of the policy for endorsement, but the policy was continually held by the syndicate. All premiums were paid by the syndicate except one quarterly premium of $260 paid by Gordon.

In 1932, pursuant to an agreement between the insured and the beneficiaries, Gordon relinquished his right to disability benefits and to change the beneficiary, in consideration of a payment to him by the syndicate of one-eighth of the proceeds of the policy received during his lifetime, and the payment of one-eighth of the proceeds to his wife after his death. The policy was changed to conform to this agreement by naming John D. McCoach as trustee beneficiary, and inserting an extension-of-rights clause therein in his favor, thereby placing the contract under his absolute control.

In the years 1934, 1935, and 1936, three of the original members of the syndicate assigned their interest in the policy to persons who did not know Colonel Gordon, had advanced no money to him, were not related to him, and had not dealt with him in any way except to pay their pro-rata part of the premiums maturing on the policy between the dates of the assignment to each and the death of the insured. For some time before his death, Gordon was paid disability benefits, which payments were divided as provided by the agreement, one-eighth to Gordon and seven-eighths to the beneficiaries and the assignees.

The policy of insurance was applied for by Gordon in the State of New York, and it was delivered to him there from the home office of the insurer in New Jersey. The term policy was converted into a full life policy upon papers executed in New York, and that policy was delivered in New York. The change in the operation of the policy which placed the policy under the control of the trustee was effected by papers executed by Gordon in Texas and forwarded to and executed by each of the beneficiaries in the State of New York. These papers were then sent to the insurer in New Jersey, which returned the executed papers to the trustee in New York. The interpleader was filed in a United States District Court in Texas.

The actual dispute lies between the administrator and the assignees of the beneficiaries. It is claimed that those who hold their interest by assignment, having had no dealings or relationship of any kind with the insured, had no insurable interest in Gordon's life and could not have a policy thereon. Two reasons are advanced to support this claim: that the agreement in 1932, under which McCoach, as trustee, became the beneficiary, was a Texas contract and was governed by the law of that state, which law limited recovery to those having an insurable interest; and, whether or not it was a Texas contract, the district court in which the interpleader was filed sat in Texas and was bound by the public policy of that state, which did not permit anyone, not acting in a representative capacity, to collect the proceeds of insurance policies on a life in which they had no insurable interest.

The policy of insurance was applied for in the State of New York, and was delivered in New York; and it is conceded that it was governed by the laws of that state. The conversion of the term policy into a full life policy, the change of beneficiary, and the assignments of interests in the policy were made in accordance with clauses in the policy specifically providing therefor. These changes were made by the insurer in the discharge of obligations incurred in and outstanding by virtue of the original insurance contract. Such changes do not constitute new contracts, and do not result in changing the law applicable to the policy.[1]

Appellant concedes, and the court below found as a fact, that the original beneficiaries of the insurance each had insurable interests. If no assignments had been made prior to the maturity of the policy, the beneficiaries would have been entitled to seven-eighths of the proceeds thereof. This would have been true whether the New York law, which required no insurable interest, or the law of Texas, which did require it, was applied. The question, then, is whether the assignments, made from beneficiaries entitled to receive the proceeds to assignees lacking an insurable interest, vest in the assignees the right to recover their pro-rata part of the insurance proceeds.

---

[1] Aetna Life Insurance Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342; Dannhauser v. Wallenstein, 169 N.Y. 199, 62 N.E. 160.

■ Under the terms of the policy, a New York contract, no restrictions were placed upon assignments relating to insurable interest. None was created by the laws of New York. Each of the assignments was executed and delivered in New York by residents of that state to other residents. They were New York contracts and valid under its laws. To apply the laws of Texas to the New York contracts would constitute an unwarranted extraterritorial control of contracts and regulation of business outside of Texas in disregard of the laws of New York; this is not changed by the trial of the suit in a court sitting in Texas. Overby v. Gordon, 177 U. S. 214, 222, 20 S.Ct. 603, 44 L.Ed. 741; New York Life Insurance Co. v. Head, 234 U.S. 149, 34 S.Ct. 879, 58 L.Ed. 1259; Bond v. Hume, 243 U.S. 15, 37 S.Ct. 366, 61 L.Ed. 565; Aetna Life Insurance Co. v. Dunken, 266 U.S. 389, 399, 45 S.Ct. 129, 69 L.Ed. 342.

We are of the further opinion that it is immaterial, in so far as the decision of this case is concerned, whether the law of Texas or the law of New York be applied. The reasoning by which this conclusion is reached also disposes of the last two contentions of the appellant. In the present case, the insurer acknowledged liability and paid the money into court. This being so, not only does the objection of wagers disappear, but also the claimed principle of public policy.[2]

■ In those jurisdictions where the public policy is opposed to the grant of insurance proceeds to persons lacking insurable interest, the consistent purpose of the policy is to prevent wagering policies. The two contentions of appellant which advance the "public policy" and "gambling transactions" claims must stand or fall together.[3] Since a fair and proper insurable interest was present when the policy was issued, and it was taken out in good faith, the purpose of the rule condemning wagers was sufficiently satisfied.[4] Modern policies of insurance are no longer mere indemnity contracts, but are property and have property values.[5]

■■ The principle of public policy being out of the case, no one but the insurer was privileged to object for the lack of an insurable interest.[6] The insurer made no objection, and paid the full amount of its liability. The policy was valid when issued, and remained valid for more than ten years. A valid policy is not avoided by the cessation of the insurable interest, even as against the insurer, unless the policy itself so provides.[7]

We conclude that the lack of an insurable interest in the assignees did not authorize a recovery of their interests in the policy by the administrator. The insurance proceeds were properly apportioned by the court below, and its judgment is affirmed.

---

[2] Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas.1913B, 863. Cf. Phoenix Mutual Life Ins. Co. v. Bailey, 13 Wall. 616, 20 L.Ed. 501; Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997.

[3] Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251; Grigsby v. Russell, supra; 29 Am.Jur., Sec. 319.

[4] Connecticut Mutual Life Ins. Co. v. Schaefer, supra.

[5] Grigsby v. Russell, supra.

[6] Connecticut Mutual Life Ins. Co. v. Schaefer, supra; Wheeler v. Insurance Co., 101 U.S. 439, 25 L.Ed. 1055; Grigsby v. Russell, supra; 29 Am.Jur. 291, 292.

[7] Connecticut Mutual Life Ins. Co. v. Schaefer, supra; Grigsby v. Russell, supra; Northwestern Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155; Dalby v. Life Insurance Co., 15 C. B. 365.