# GRIGSBY *v.* RUSSELL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SIXTH CIRCUIT.

No. 53. Argued November 10, 13, 1911.—Decided December 4, 1911.

A condition in an insurance policy that it shall be void for non-payment
of premiums means only that it shall be voidable at option of the
company.

The rule of public policy that forbids the taking out of insurance by
one on the life of another in which he has no insurable interest does
not apply to the assignment by the insured of a perfectly valid
policy to one not having an insurable interest.

In this case, *held*, that the assignment by the insured of a perfectly
valid policy to one not having any insurable interest but who paid
a consideration therefor and afterwards paid the premiums thereon
was valid and the assignee was entitled to the proceeds from the
insurance company as against the heirs of the deceased.

A valid policy of insurance is not avoided by a cessation of insurable
interest even as against the insurer unless so provided by the policy
itself. *Conn. Mut. Ins. Co.* v. *Schaefer*, 94 U. S. 457; *Warnock* v.
*Davis*, 104 U. S. 775, distinguished.

Where there is no rule of law against paying to an assignee who has no
insurable interest in the life of the insured, and the company waives
a clause in the policy requiring proof of interest, the rights of the
assignee are not diminished by such clause as against the insured's
administrator.

Even though a court below might hesitate to decide against language
of this court referring to a debated point, if there has been no direct
decision this court is not precluded by such references when the
point is actually before it.

168 Fed. Rep. 577, reversed.

THE facts are stated in the opinion.

*Mr. Montague S. Ross* and *Mr. Jno. A. Pitts,* with whom
*Mr. K. T. McConnico* was on the brief, for petitioner:

A life insurance policy, taken out in good faith by the

insured, with no idea of assigning it, payable to his "executor, administrator or *assigns,*" can *afterwards,* in good faith, and for a valuable consideration, with the knowledge and assent of the insurer, be sold and assigned to one who has no insurable interest in the life of the insured; and such assignee, after he had bought a policy, taking an absolute assignment thereof, and in good faith, with the knowledge and consent of the company, pays the subsequent premiums, acquires the right to collect the proceeds of the policy at maturity.

The conflicting decisions upon this question have given rise to two general rules, termed respectively by judges and text-writers: (a) The "prevailing" or "majority" rule, holding such assignments valid, and (b) the "minority" rule holding them void.

This court has not as yet directly decided this question, but its decisions on similar questions have been differently construed in the various circuits. The Eighth Circuit has endorsed the majority, and the Fifth and Sixth Circuits, the minority rule. *Gordon* v. *Ware National Bank,* 132 Fed. Rep. 444, 450; *Alexander* v. *Lane,* 157 Fed. Rep. 1002; *Clark* v. *Equitable Life Ass. Soc.,* 143 Fed. Rep. 176.

There are also conflicting views of other courts and of text-writers with respect to the trend of the decisions of this court: see in *Clark* v. *Allen,* 11 R. I. 439, action was for money had and received by the widow of an insured against an assignee of the policy, the assignee having collected the money from the insurance company under the assignment; *Chamberlain* v. *Butler,* 54 L. R. A. 338; *Bursinger* v. *Bank of Watertown,* 67 Wisconsin, 76; *Fitzpatrick* v. *Insurance Co.,* 56 Connecticut, 116; *Amick* v. *Butler,* 111 Indiana, 578; *Insurance Co.* v. *Hazard,* 41 Indiana, 116; *Insurance Co.* v. *Brown,* 159 Indiana, 644; *Hardy* v. *Insurance Co.,* 152 No. Car. 286.

The following text-writers and annotators treat or cite the decisions of this court as favoring the "majority"

rule: Bacon on Benefit Societies and Life Insurance, 2d ed., § 302; 2 Joyce on Insurance, §§ 914–919; Am. & Eng. Encyc. of Law, 2d ed., 1025; May on Insurance (ed. 1891), § 398a; 25 Cyc. Law & Procedure, 709; *Crosswell v. Insurance Co.,* 51 So. Car. 103; *Merchants' Nat. Bank v. Comins* (N. H.), 101 Am. St. Reps. 657; *Steinback v. Diepenbrock,* 44 L. R. A. 417. See also note to 87 Am. St. Reps. 507.

The cases in this court that have been heretofore invoked by either side are, in chronological order, as follows: *Cammack v. Lewis,* 15 Wall. 643; *Conn. Mut. Ins. Co. v. Schaefer,* 94 U. S. 457; *Ætna Life Ins. Co. v. France,* 94 U. S. 561; *Warnock v. Davis,* 104 U. S. 775; *New York Mutual Life Ins. Co. v. Armstrong,* 117 U. S. 597; *Crotty v. Insurance Co.,* 144 U. S. 621.

This court is either already committed to the "majority" rule or else has never taken any definite position upon the single sharp question presented in the case at bar. The general weight of authority is that a decided majority of the state courts uphold such assignments.

Only the States of Kansas, Alabama, Texas and Kentucky now stand clearly and unequivocally on the side of the "minority" rule. The State of Missouri is doubtful, the decisions seeming to point both ways, with possibly the stronger tendency to the "minority" rule.

On the other hand, England, Canada, Nova Scotia, New Brunswick, Arkansas, California, Colorado, Connecticut, Georgia, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, and Wisconsin are unquestionably arrayed on the side of the "majority" rule. And if we correctly construe the decisions and expressions of this great court, the United States Supreme Court is also committed to that rule.

Four, and possibly five, States sustain the "minority" rule, and the United States Supreme Court, twenty-nine. States, England, Canada, Nova Scotia, and New Brunswick support the "majority" rule. The following cases will amply bear out the statement. *New York Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591; *Ætna Life Ins. Co.* v. *Grant*, 94 U. S. 561; *Ætna Life Ins. Co.* v. *Schaefer*, 94 U. S. 457; *Insurance Co.* v. *Bailey*, 13 Wall. 616; *Murphy* v. *Red*, 64 Mississippi, 614; *Steinback* v. *Diepenbrock*, 158 N. Y. 24; *Olmstead* v. *Keyes*, 85 N. Y. 593; *Valton* v. *Nat. L. Fund Assn.*, 40 N. Y. 21; *St. John* v. *Am. Mut. Life Ins. Co.*, 13 N. Y. 31; *Chamberlain* v. *Butler*, 61 Nebraska, 730; *Fitzpatrick* v. *Hartford &c. Ins. Co.*, 56 Connecticut, 116; *Bursinger* v. *Bank of Watertown*, 67 Wisconsin, 76; *Clark* v. *Allen*, 11 R. I. 439; *Crosswell* v. *Conn. Indemnity Assn.*, 51 So. Car. 103; *Rylander* v. *Allen*, 125 Georgia, 206; *A. O. U. W.* v. *Brown*, 112 Georgia, 545; *Matlock* v. *Bledsoe*, 90 S. W. Rep. 849; *Mechanics' Nat. Bank* v. *Comins*, 77 N. H. 12; *Mut. L. Ins. Co.* v. *Allen*, 138 Massachusetts, 564; *King* v. *Crane*, 185 Massachusetts, 103; *Brown* v. *Greenfield Life Assn.*, 172 Massachusetts, 498; *Dixon* v. *Nat. Life Ins. Co.*, 168 Massachusetts, 48; *Tateum* v. *Ross*, 150 Massachusetts, 440; *Hurst* v. *Robinson*, 78 Maryland, 67; *Rittler* v. *Smith*, 70 Maryland, 261; *Souder* v. *Home Friendly Soc.*, 72 Maryland, 511; *Hardy* v. *Insurance Co.*, 152 No. Car. 286; *Eckel* v. *Renner*, 41 Oh. St. 232; *Vivar* v. *Knights Pythias*, 52 N. J. L. 455, 469; *Trenton Mut. L. Ins. Co.* v. *Johnson*, 24 N. J. L. 576, 585; *Brown* v. *Equitable Life*, 75 Minnesota, 412; *Hogue* v. *Minn. Packing Co.*, 59 Minnesota, 39; *Martin* v. *Stubbins*, 126 Illinois, 387; *Bloomington M. B. Assn.* v. *Blue*, 120 Illinois, 121; *Moore* v. *Chicago Guar. Fund Life*, 178 Illinois, 202, 52 N. E. Rep. 882; *Givens* v. *Veeder*, 9 N. Mex. 256; *Harrison's Admr.* v. *Ins. Co.*, 78 Vermont, 473; *Lewis' Admr.* v. *Edwards* (Tenn.), Mss., Nashville, Dec. Term, 1903; *Davis* v. *Brown*, 159 Indiana, 644; *Millner* v. *Bowman*, 119 Indiana, 440; *Amick* v.

*Butler,* 111 Indiana, 578; *Hutson* v. *Merrifield,* 51 Indiana, 24; *Wheeland* v. *Atwood,* 192 Pa. St. 237; *Ulreich* v. *Reinahl,* 143 Pa. St. 238; *Grant* v. *Kline,* 115 Pa. St. 618; *Fairchild* v. *N. E. M. L. Ins. Co.,* 51 Vermont, 613; *Hearings' Suc.,* 26 La. Ann. 326; *Suc. of Miller* v. *Manhattan Ins. Co.,* 110 La. Ann. 654; *Stewart* v. *Sutcliffe,* 46 La. Ann. 240; *Prud. Ins. Co.* v. *Liersch,* 122 Michigan, 436; *Sheets* v. *Sheets,* Colo. App. 450; 36 Pac. Rep. 310; *Lemon* v. *Phœnix Mut. L. Ins. Co.,* 38 Connecticut, 294; *Farmers & Traders' Bank* v. *Johnson,* 118 Iowa, 282; *Curtis* v. *Ætna L. Ins. Co.,* 90 California, 255; *McFarland, Adm'r,* v. *Creath,* 35 Mo. App. 112, 121; *Ins. Co.* v. *Hamilton,* 5 Sneed (Tenn.), 269; *Ashley* v. *Ashley,* 3 Sim. 149; 6 Eng. Chy. Rep. 149; *Dalby* v. *India & London Policy Co.,* 15 C. B. 365, and note; *Law* v. *London Policy Co.,* 1 Kay & J. 223; *Vazina* v. *N. Y. L. Ins. Co.,* 6 Can. S. C. 278; *N. Am. L. Assur. Co.* v. *Craigen,* 13 Can. S. C. 278; 18 Novia Scotia, 440; *Mut. L. Assur. Co.* v. *Anderson,* 1 N. Bruns. Eq. Rep. 466; *Brett* v. *Warnick,* 44 Oregon, 511; *Cunningham* v. *Smith,* 70 Pa. St. 450.

In Virginia the question has been regulated by ch. 180, approved April 27, 1903.

*Mr. George T. Hughes* for respondents:

The rule contended for by the plaintiff allows the contract to be set afloat on the sea of commerce; the one contended for by respondent keeps it under the control of the assured and allows it to be used only as a security for sums advanced, thus taking away the temptation to evil, and holding out to the assured the possibility and hope of redeeming his contract.

For cases holding that a policy cannot be assigned to one having no insurable interest, see *Chamberlain* v. *Butler,* 87 Am. St. Rep. 508, and note in 3 L. R. A. (N. S.) 953; and see also: *Ala. Gold Ins. Co.* v. *Mobile Ins. Co.,* 81 Alabama, 321; *Helmetag* v. *Miller,* 76 Alabama, 183; *Missouri Valley Ins. Co.* v. *Sturges,* 18 Kansas, 93; *Mo. Val-*

*ley Ins. Co.* v. *McCuen,* 36 Kansas, 146; *Basye* v. *Adams,* 81 Kentucky, 308; *Beard* v. *Sharp,* 100 Kentucky, 606; *Brumly* v. *Ins. Co.,* 92 S. W. Rep. 17; *Huesner* v. *Ins. Co.,* 47 Mo. App. 336; *Ins. Co.* v. *Richards,* 99 Mo: App. 88; *Downey* v. *Hoffer,* 110 Pa. St. 109; *Ins. Co.* v. *Norris,* 115 Pa. St. 446; *Gilbert* v. *Moose,* 104 Pa. St. 74; *Hoffman* v. *Hoke,* 122 Pa. St. 377; *Price* v. *Knights of Honor,* 68 Texas, 361; *Insurance Co.* v. *Hazlewood,* 75 Texas, 338; *Wilton* v. *Ins. Co.,* 34 Tex. Civ. App. 156; *Tate* v. *Ins. Co.,* 97 Virginia, 74; *Roller* v. *Moore,* 86 Virginia, 512.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill of interpleader brought by an insurance company to determine whether a policy of insurance issued to John C. Burchard, now deceased, upon his life, shall be paid to his administrators or to an assignee, the company having turned the amount into court. The material facts are that after he had paid two premiums and a third was overdue, Burchard, being in want and needing money for a surgical operation, asked Dr. Grigsby to buy the policy and sold it to him in consideration of one hundred dollars and Grigsby's undertaking to pay the premiums due or to become due; and that Grigsby had no interest in the life of the assured. The Circuit Court of Appeals in deference to some intimations of this court held the assignment valid only to the extent of the money actually given for it and the premiums subsequently paid. 168 Fed. Rep. 577, 94 C. C. A. 61.

Of course the ground suggested for denying the validity of an assignment to a person having no interest in the life insured is the public policy that refuses to allow insurance to be taken out by such persons in the first place. A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end. And

although that counter interest always exists, as early was emphasized for England in the famous case of Wainewright (Janus Weathercock), the chance that in some cases it may prove a sufficient motive for crime is greatly enhanced if the whole world of the unscrupulous are free to bet on what life they choose. The very meaning of an insurable interest is an interest in having the life continue and so one that is opposed to crime. And, what perhaps is more important, the existence of such an interest makes a roughly selected class of persons who by their general relations with the person whose life is insured are less likely than criminals at large to attempt to compass his death.

But when the question arises upon an assignment it is assumed that the objection to the insurance as a wager is out of the case. In the present instance the policy was perfectly good. There was a faint suggestion in argument that it had become void by the failure of Burchard to pay the third premium *ad diem*, and that when Grigsby paid he was making a new contract. But a condition in a policy that it shall be void if premiums are not paid when due, means only that it shall be voidable at the option of the company. *Knickerbocker Life Insurance Company* v. *Norton*, 96 U. S. 234; *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.*, 135 Massachusetts, 248. The company waived the breach, if there was one, and the original contract with Burchard remained on foot. No question as to the character of that contract is before us. It has been performed and the money is in court. But this being so, not only does the objection to wagers disappear, but also the principle of public policy referred to, at least in its most convincing form. The danger that might arise from a general license to all to insure whom they like does not exist. Obviously it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust. The law has no

universal cynic fear of the temptation opened by a pecuniary benefit accruing upon a death. It shows no prejudice against remainders after life estates, even by the rule in *Shelley's Case.* Indeed, the ground of the objection to life insurance without interest in the earlier English cases was not the temptation to murder but the fact that such wagers came to be regarded as a mischievous kind of gaming. St. 14 George III, c. 48.

On the other hand, life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property. This is recognized by the Bankruptcy Law, § 70, which provides that unless the cash surrender value of a policy like the one before us is secured to the trustee within thirty days after it has been stated the policy shall pass to the trustee as assets. Of course the trustee may have no interest in the bankrupt's life. To deny the right to sell except to persons having such an interest is to diminish appreciably the value of the contract in the owner's hands. The collateral difficulty that arose from regarding life insurance as a contract of indemnity only, *Godsall* v. *Boldero*, 9 East, 72, long has disappeared. *Phœnix Mutual Life Ins. Co.* v. *Bailey*, 13 Wall. 616. And cases in which a person having an interest lends himself to one without any as a cloak to what is in its inception a wager have no similarity to those where an honest contract is sold in good faith.

Coming to the authorities in this court, it is true that there are intimations in favor of the result come to by the Circuit Court of Appeals. But the case in which the strongest of them occur was one of the type just referred to, the policy having been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to it at once. *Warnock* v. *Davis*, 104 U. S. 775.

On the other hand it has been decided that a valid policy is not avoided by the cessation of the insurable interest, even as against the insurer, unless so provided by the policy itself. *Connecticut Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457. And expressions more or less in favor of the doctrine that we adopt are to be found also in *Ætna Life Ins. Co.* v. *France*, 94 U. S. 561. *Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591. It is enough to say that while the court below might hesitate to decide against the language of *Warnock* v. *Davis*, there has been no decision that precludes us from exercising our own judgment upon this much debated point. It is at least satisfactory to learn from the decision below that in Tennessee, where this assignment was made, although there has been much division of opinion, the Supreme Court of that State came to the conclusion that we adopt, in an unreported case, *Lewis* v. *Edwards*, December 14, 1903. The law in England and the preponderance of decisions in our state courts are on the same side.

Some reference was made to a clause in the policy that "any claim against the company arising under any assignment of the policy shall be subject to proof of interest." But it rightly was assumed below that if there was no rule of law to that effect and the company saw fit to pay, the clause did not diminish the rights of Grigsby as against the administrators of Burchard's estate.

*Decree reversed.*

MR. JUSTICE LURTON took no part in the decision of this case.