## EQUITABLE LIFE INS. CO. OF IOWA v. CUMMINGS et al.

(Circuit Court of Appeals, Third Circuit. March 16, 1925.)

No. 3251.

1. **Insurance ⬥114—Not necessary that beneficiary in life policy shall have insurable interest.**

A person has an unlimited insurable interest in his own life, and may lawfully take out policies of insurance on his life and make them payable to whom he desires, and it is not necessary to their validity that the beneficiary should have an insurable interest.

2. **Insurance ⬥139—Exclusion of evidence in contest over right to proceeds of life policies held not error.**

The exclusion of evidence offered to show that illicit relations existed between insured in life policies and the woman named as beneficiary, and who was assignee of the policies, in a suit between such beneficiary and the administrator of insured, held, not error.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Bill of interpleader by the Equitable Life Insurance Company of Iowa against Kathryn Cummings and Alfred Freeman, administrator. Decree for Kathryn Cummings, and Freeman appeals. Affirmed.

James A. Wakefield, Alexander Cooper, and Max J. Spann, all of Pittsburgh, Pa., and Dorff & Levy and I. Alfred Levy, all of New York City, for appellant.

William McElwee, Jr., and James W. Rhodes, both of New Castle, Pa., for appellee.

Ward C. Henry, of Philadelphia, Pa., and C. Chester Kaufmann, of Pittsburgh, Pa., for Equitable Life Ins. Co. of Iowa.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. The Equitable Life Insurance Company of Iowa issued two certain policies of insurance upon the life of Jesse J. Freeman, each in the sum of $2,000, payable to Kathryn Cummings as beneficiary, and designating her as the fiancée of the assured. Kathryn Cummings also held an assignment of the policies, which had been accepted as such by the insurance company. At the death of Jesse J. Freeman, Kathryn Cummings claimed the amount of the policies as the beneficiary named therein and under the assignment, and Al-

fred Freeman claimed the amount as administrator of Jesse J. Freeman, deceased.

The insurance company thereupon filed a bill of interpleader under the provisions of the Act of Congress of February 22, 1917, c. 113, 39 Stat. 929 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 991a), against Kathryn Cummings and Alfred Freeman, administrator, paid the amount due under the policies, $4,000, into court, and an issue in interpleader was framed as a suit in equity, in which Alfred Freeman, as administrator, was the plaintiff, and Kathryn Cummings the defendant.

Freeman, as administrator, claimed the fund in court because, inter alia, the policies were made payable to Kathryn Cummings as fiancée of the assured, whereas, at the time the policies were taken out, she was the wife of Edward Cummings. That fact was admitted by Mrs. Cummings, who averred that her husband had deserted her before the policies were taken out, and they had not thereafter lived together as husband and wife. Freeman further averred that the assured had made application for and taken out the policies, and made them payable to Kathryn Cummings, at her special instance and request, and that at that time Kathryn Cummings and Jesse J. Freeman were living in a meretricious relationship; that the premiums were paid by Kathryn Cummings; that she had no insurable interest, and had given no consideration for the assignments of the policies to her.

Kathryn Cummings, answering, averred that she was the fiancée of Jesse J. Freeman when the policies were taken out, denied that she had paid the premiums, and averred that they were paid by the assured. She denied that the assured had taken out the policies at her special instance and request, denied the relationship charged to have existed between her and the assured, and averred the designation of her as fiancée was descriptive only and intended for the purpose of identification; that the assignment was made by Freeman in his lifetime, in consideration of his love and affection for her, and in order to make more secure her title to the policies; that he had given the policies to her in his lifetime, and they were in her possession at the time of his death, and at the time suit was brought. The case was heard on pleadings and proofs, and the issues of fact and law determined in favor of Kathryn Cummings, whereupon a decree was entered awarding the fund to her.

Briefly stated, the learned trial judge found upon the evidence presented that the policies of insurance were taken out by Jesse J. Freeman at his own instance, without the knowledge or request of Kathryn Cummings, and were subsequently delivered to her by the assured; that the premiums were paid by the assured, either directly himself or by Kathryn Cummings, at his request, with money furnished by the assured for that purpose; that Kathryn Cummings was named as beneficiary in the two policies and was described therein as "fiancée"; that, in addition to being named beneficiary in the policies, the policies were assigned to Kathryn Cummings by assignments in writing and under seal, which assignments were attached to the policies, and duplicates thereof were filed wth the insurance company. The conclusion of law was that Kathryn Cummings was entitled to the fund in court and to a decree in her favor for the amount thereof.

As to the contention of the plaintiff in the issue that the defendant had no insurable interest in the life of the assured, and that therefore the policies were wagering policies, the court held that every one has an unlimited insurable interest in his own life, may take out a policy of insurance, and make it payable to whomever he chooses, irrespective of whether or not the beneficiary named has an insurable interest; that therefore, upon the facts found, the law as to wagering policies had no application to the case.

The contention that Mrs. Cummings could not recover upon the policies because she was not in fact the fiancée of Jesse J. Freeman, the assured, and was disqualified to enter into the contract to marry him for the reason that she had a husband living, was ruled against the plaintiff upon the ground that the word "fiancée" in the policies is used as a word of description only, and there was no question but that the defendant was the person to whom the assured desired the insurance money to be paid. The court found that she was described as "fiancée" because she had promised to marry the assured as soon as the marriage relation existing between herself and her husband could be dissolved; that it was immaterial that the engagement was not in fact a legal one, as she was amply described and identified without the use of the word "fiancée."

The offer of proof of a meretricious relationship existing between Jesse J. Freeman and Mrs. Cummings was excluded as immaterial, upon the ground that, even if

such illicit relationship existed, the assured was not thereby incapacitated from making a valid contract of insurance for Mrs. Cummings' benefit, by which the insurance company was to pay the proceeds at his death to Mrs. Cummings. The defendant offered proof to show that the assignments were forged. The court was not convinced of that fact, and found, to the contrary, that the assignments were executed by Jesse J. Freeman.

[1] Assuming, for the purpose of passing upon the assignments of error in law, that the court below properly ruled upon the evidence, and that the evidence admitted is sufficient to sustain the findings of fact, we are satisfied that there was no error in the conclusion of the trial judge that the policies in question were lawful contracts of insurance in favor of Kathryn Cummings, and not wagering policies. It has been the law in Pennsylvania since Scott v. Dickson, 108 Pa. 6, 56 Am. Rep. 192, that a man may insure his own life, paying the premiums himself for the benefit of another, who has no insurable interest, and that such a transaction is not a wagering policy. The ground upon which, in the earlier cases, it was held that the beneficiary must have an insurable interest, was that life insurance was treated as a contract of indemnity merely, and therefore the beneficiary must have an insurable interest, not only at the time the policy is taken out, but the interest must continue to the time of death. Goodsall v. Boldero, 9 East, 72.

The modern doctrine, which is sustained by the preponderance of authority, treats a contract of life insurance, not as a contract of indemnity, as in the case of fire or marine insurance, but as a contract to pay a certain sum of money in the event of death. Scott v. Dickson, supra; Phœnix Mutual Life Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501. Mr. Justice Holmes said in Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863:

"So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property. This is recognized by Bankruptcy Law, § 70, which provides that, unless the cash surrender value of a policy like the one before us is secured to the trustee within thirty days after it has been stated, the policy shall pass to the trustee as assets. Of course the trustee may have no interest in the bankrupt's life. To deny the right to sell, except to persons having such an interest, is to diminish appreciably the value of the contract in the owner's hands."

The essential thing is that the policies shall be obtained in good faith and not for the purpose of speculating upon the hazard of a life in which the insured has no interest. Connecticut Life Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251. The mere fact, then, that the beneficiary of the policies in question had, neither at the time the policies were taken out, nor at the time of the death of the assured, an insurable interest in his life, does not in itself prevent her recovery, either as beneficiary or as assignee of the policies; for, regarding the policy as a contract with the insurance company payable at his death, Jesse J. Freeman, the assured, had an unlimited insurable interest in his own life, and might lawfully take out policies of insurance on his life and make them payable to whom he desired, and it was not necessary that the beneficiary, Kathryn Cummings, should have an insurable interest. Hill v. United Life Insurance Association, 154 Pa. 29, 25 A. 771, 35 Am. St. Rep. 807; Phillips' Estate, 238 Pa. 423, 86 A. 289, Ann. Cas. 1914C, 282, 45 L. R. A. (N. S.) 982; Haberfeld v. Mayer, 256 Pa. 151, 100 A. 587; Grigsby v. Russell, supra, distinguishing Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924.

As, under the findings of fact, the defendant neither took out the policies nor was instrumental in having the assured do so, and the premiums were paid by the assured or with money furnished by him, we find no error in the conclusions of law based upon the facts found.

Coming, now, to the rulings upon the evidence, an examination of the record fails to convince us that the trial judge was in error. In the instances insisted upon as error, the plaintiff's offers of proof were entirely inconsistent with the questions put to the witnesses, dependent upon such offers, and objections thereto were properly sustained. The plaintiff's testimony, however, which was offered to show that Mrs. Cummings procured the taking out of the policies by the assured, and that she paid the premiums out of her own money, and that the signatures to the assignments were forgeries, was freely admitted. The rulings against the plaintiff, of which complaint is made, were to questions not pertinent to the offers of proof. The statement of the trial judge at the hearing that it was immaterial whether Jesse J. Freeman or Kathryn Cummings paid the

premiums is of no apparent consequence, in view of the fact that the plaintiffs' testimony on that subject was freely admitted and considered.

[2] We find no error in sustaining the objections to the offers of proof of the alleged relationship between the assured and Mrs. Cummings, or of a similar ruling upon offers to show that the assured lived at Mrs. Cummings' house. Finally, the findings of fact were based upon conflicting evidence, and we see no reason for disturbing them.

Finding no substantial error in the record, the decree is affirmed.