MIDLAND NATIONAL LIFE INSURANCE COMPANY, a Corporation, Formerly Dakota Life Insurance Company, a Corporation, Appellant, v. SOPHIA MOSHER, as Administratrix of the Estate of Oscar Mosher, Deceased, Appellant. L. R. BAIRD, as Successor and Receiver of the Dazey State Bank of Dazey, North Dakota, and J. E. Jacobson, Defendants, and L. ENGER, Respondent.

(232 N. W. 894.)

Opinion filed August 4, 1930. Rehearing denied November 20, 1930.

*Lawrence, Murphy, Fuller, & Powers* and *John B. Hanten,* for appellants.

*Pierce, Tenneson, Cupler & Stambaugh* (*Ueland & Ueland* of counsel), for respondent.

NUESSLE, J. This action was begun on June 19, 1923, to cancel a life insurance policy on the ground that the same was obtained through false and fraudulent representations as to the health of the insured.

After the institution of the action, and on September 10, 1923, the insured died. His administratrix was substituted as a party defendant and service was made upon her on December 11, 1923. The policy in question had been assigned to L. Enger and he was joined as a defendant. He answered and counterclaimed, denying the alleged fraud and

setting up his own interest, and demanded judgment for the amount of the policy. Both the insured and his administratrix defaulted. The case did not come to trial until January, 1929. On the second day of the trial the administratrix, pursuant to leave granted on her application, served and filed an answer which was in effect a cross-complaint. The trial was continued, the defendant Enger had judgment, and the plaintiff and administratrix both appeal.

. The facts are substantially as follows: One Jacobson was the president and in the active management of a bank at Dazey, North Dakota. In fact Jacobson appears to have been the bank and it is hard to distinguish between his transactions and the bank's. Among others he did business with Oscar Mosher who became largely indebted to the bank and to Jacobson. This relationship began in 1900 and continued up to the time of the death of Mosher. Jacobson made a practice of selling notes to his uncle, the defendant Enger, who lived in Chicago. Enger had great confidence in Jacobson and sent him large sums of money for investment purposes. In 1920, Mosher was heavily indebted to the bank as well as to Jacobson and others. On May 14th he made application to the plaintiff life insurance company for two policies of insurance, one for $10,000 and one for $5,000. He told his wife he was endeavoring to so arrange it that if anything happened to him there would be something to take care of the family and redeem his debts. These policies were issued. The $5,000 policy involved in this action is payable to the insured's executors, administrators, or assigns. The policy is dated May 14, 1920. As to when it was actually issued does not definitely appear but the application itself bears the plaintiff's written acknowledgment of the receipt of the premium for the period from May 14, 1920 to November 28, 1920, and the plaintiff alleges in its complaint that the premium was paid on June 10, 1920. Jacobson was the agent of the plaintiff company at the time the policies were issued and the premiums were paid with money advanced by the Dazey bank, for which Mosher gave his notes. On July 17, 1920, the policy was assigned to the Dazey bank. The assignment was approved by the plaintiff. Apparently Mosher assigned both of the policies as security to his indebtedness to Jacobson and the bank. On January 13, 1923, Mosher signed up notes in large amounts to cover his indebtedness. The notes were presented to him for signature by one Neal who acted in the

transaction as agent for the bank and for Jacobson owing to the illness of the latter. They were denominated renewal notes. Among them was one for $5,000 running to Enger. This note was guaranteed by the bank and by Jacobson personally. Apparently it was sold to Enger by the bank and Jacobson pursuant to the practice that had been theretofore followed in disposing of paper to Enger. On the same day Mosher and the bank also assigned the $5,000 policy to Enger. The assignment recites that "it is given to secure the payment to the said party of the second part (Enger) of the sum of Five Thousand & No/100ths Dollars according to the tenor and conditions of one promissory note." This assignment was duly approved by the plaintiff. Subsequently Jacobson assigned the $10,000 policy to the Midland National Bank of Minneapolis as collateral for certain indebtedness owed to that institution by himself or the Dazey bank. In May, 1923, the plaintiff induced Mosher who was then very ill with tuberculosis to agree to a rescission of the insurance contracts. As a consideration for his so doing plaintiff gave him $300 cash and agreed to return to him the remainder of the premiums which had theretofore been paid. At the time of the rescission agreement Mosher did not have possession of the policies as they had been assigned as heretofore stated. Mosher died on September 10, 1923. Enger gave notice and proof of death and demanded payment of the policy on October 15, 1923. Prior to Mosher's death and after the agreement to rescind, the plaintiff instituted actions in the North Dakota courts to cancel the policies on the ground of fraud. Later the Midland National Bank of Minneapolis, the assignee of the $10,000 policy, brought suit in Minnesota to recover on that policy. That action was tried in the federal court and resulted adversely to the present plaintiff. See Dakota L. Ins. Co. v. Midland Nat. Bank (C. C. A. 8th) 18 F. (2d) 903; Midland Nat. Bank v. Dakota L. Ins. Co. 277 U. S. 346, 72 L. ed. 911, 48 S. Ct. 532. However this litigation is only incidentally material here.

When the instant case came to trial Mosher and his administratrix had long been in default. The administratrix on the second day of the trial, having asked and been granted leave to answer, did so, the defendant Enger protesting. Her answer was in effect a cross-complaint, admitting that the policy had been obtained through fraud, conceding that it should be cancelled, and asking that the administratrix be given

judgment against the plaintiff for the amount of the premiums paid, and further setting up various defenses against the defendant's counterclaim. Evidence was offered pursuant to the issues as made by the several pleadings. Various contentions were urged on the parts of the plaintiff and the administratrix. The plaintiff contended not only that there was fraud in the inception of the insurance contract such as to warrant a cancellation of the policy, but also that the policy was a wagering contract and therefore void as contrary to public policy. Plaintiff further contended that the assignment from Mosher to Enger was fraudulently induced and without consideration, and that, in any event, the recovery could not exceed the amount of the debt for which the policy was security and that such amount was less than the face of the policy. The administratrix as against Enger challenged his good faith and contended that the note had been fraudulently obtained and that there was no consideration therefor; that there was no consideration for the assignment of the policy to Enger; that if the policy was not cancelled the estate was entitled to the proceeds thereof in excess of Mosher's indebtedness to Enger; that no claim on account of the note had been presented by Enger against the estate as required by the statute, § 8736, Comp. Laws 1913; that therefore the bar of the statute had fallen as against such claim and accordingly Enger could not sue and recover on the policy.

The policy in question is in evidence. It is conceded to be a North Dakota contract. It is on a non-standard form (see § 6635, Comp. Laws 1913) and so is subject to the provisions of § 6635c, Comp. Laws 1913.

The trial court found the facts to be substantially as heretofore stated. That there was no proof of fraud in the inception of the insurance contract; that Enger was a holder in good faith for value of the Mosher $5,000 note; that there was no fraud in the assignment of the policy by the bank and by Mosher and that Enger was a good faith holder thereof; and held that the policy was incontestable; that it was not a wagering policy; and that Enger was entitled to judgment for the amount thereof with interest, less an unpaid premium, payment of which had been extended by agreement as between Mosher and the plaintiff. Judgment was entered accordingly and both the plaintiff and the administratrix appeal.

The appellants strenuously challenge the findings of fact of the trial court and predicate their contentions as to the law largely on the version of the facts for which they contend. We have examined the record carefully. Both Mosher and Jacobson were dead at the time of the trial. In view of this fact, necessarily many details of their numerous business transactions are more or less the subject of conjecture. While it is difficult to decipher the facts, we have come to the conclusion that the findings as made by the trial court are fully sustained by the record. This being so practically the whole foundation is cut from beneath the legal propositions urged by the appellants in support of their appeals. Thus since there was no fraud established in the inception of the insurance contract or with respect to the assignments to Enger and the approval thereof by the plaintiff, the contentions based upon the theory that there was fraud in these respects fall. Likewise, since it appears that Mosher was indebted to Enger in the full sum of the $5,000 note, the contentions based upon the theory that there was no consideration for this note also fall. And since at the time the insurance contract was entered into Mosher was heavily indebted to Jacobson and to the bank and the premiums were paid by him through the bank, and at the time the policy was assigned to Enger, Mosher was indebted in the amount of the note to Enger, the contention that the contract was a wagering contract and on that account void also falls. See §§ 6628 and 6629, Comp. Laws 1913; Talcott v. Bailey, 54 N. D. 19, 208 N. W. 549; Grigsby v. Russell, 222 U. S. 149, 56 L. ed. 133, 36 L.R.A.(N.S.) 642, 32 S. Ct. 58, Ann. Cas. 1913B, 863; Midland Nat. Bank v. Dakota L. Ins. Co. 277 U. S. 346, 72 L. ed. 911, 48 Sup. Ct. Rep. 532.

There remains then only the question as to whether because Enger did not present his claim against the Mosher estate pursuant to the provisions of § 8736, Comp. Laws 1913, he is now barred from recovering on the policy. It is true that no claim against the estate was presented as required by the statute. But Mosher's estate was hopelessly insolvent. The obligation was the obligation not only of Mosher but also of Jacobson and of the Dazey bank, for it was guaranteed by both Jacobson and the bank. The statute, § 8736, Comp. Laws 1913, is a statute of nonclaim. See Johnson v. Larson, 56 N. D. 207, 216 N. W. 895. Failure to comply with its provisions bars the remedy but does not discharge or destroy the debt. The policy in question was

security for the debt. Enger had it in his possession. The assignment had been approved by the plaintiff company. Enger is simply seeking to realize on his security to discharge the debt to the extent of the amount that he may realize from such security. He makes no claim for any deficiency against the estate, if any should result. A creditor of a decedent whose claim is secured by mortgage, pledge, or any specific lien need not present his claim to the administrator for allowance in order to preserve his right to subject the property covered by the lien to the satisfaction of the claim. See 24 C. J. 333, and authorities cited. The point has not been heretofore ruled upon by this court, but the court of South Dakota considering a statute identical with § 8736, supra, so held. See Purdin v. Archer, 4 S. D. 54, 54 N. W. 1043; Fish v. De Laray, 8 S. D. 320, 59 Am. St. Rep. 764, 66 N. W. 465; Massey v. Fralish, 37 S. D. 91, 156 N. W. 791. We can discern no good reason for holding to the contrary.

The judgment is affirmed.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.