(No. 20424.—)

C. W. COLGROVE *et al.* Appēllants, *vs.* LEO H. LOWE *et al.* Appellees.

*Opinion filed February 18, 1931—Rehearing denied April 10, 1931.*

ROBERT S. KOLLINER, and DOYLE, SAMPSON & GIFFIN, (C. TERRY LINDNER, and A. F. NEWKIRK, of counsel,) for appellants.

OSCAR E. CARLSTROM, Attorney General, MONTGOMERY S. WINNING, DAVID J. KADYK, and JAMES W. GULLETT, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

By a bill in equity filed in the circuit court of Sangamon county the complainants sought an injunction to restrain the defendants, Leo H. Lowe, director of the Department of Trade and Commerce, and George Huskinson, superintendent of insurance in said department, from revoking the license of C. W. Colgrove to act as an insurance agent within this State or from otherwise interfering with a method used in the sale of life insurance policies known as the C. W. Colgrove System of Mutual Estate Associations. The trial court granted a temporary injunction and later the defendants demurred to the bill. At a subsequent hearing the demurrer was sustained, and when the complainants elected to abide by their bill a final decree was entered dismissing the bill. From that decree an appeal brought the case here for review.

It is agreed that the only question to be determined by this appeal is whether the Colgrove system for the promotion of life insurance sales is contrary to the public policy of this State. This system is based upon the use of a contract furnished by the life insurance agent whereby a certain number of persons, not exceeding one hundred, take out policies of life insurance on their own lives and all designate the same trust company as a common beneficiary trustee of their policies. Each policyholder agrees to maintain his insurance in force for at least five years unless the same shall mature as a death claim prior thereto, and in the event of his death within five years, twenty-five per cent

of the face amount of his insurance shall be set apart by the beneficiary trustee and divided into *pro rata* shares for the benefit of such surviving parties to the contract as have kept their insurance in force. The other seventy-five per cent interest in the insurance is paid to the estate of the deceased or to beneficiaries designated by him. Each surviving member's share in the proceeds arising from the insurance of any deceased member is to be applied by the trustee toward the cost of his insurance. At the end of five years the contract automatically expires and no restrictions exist thereafter against change in the beneficiary.

It is urged by appellees that the contract is a wagering contract, contrary to the public policy of this State, with each party thereto engaging in speculation upon the life of every other party to the contract, while appellants contend that one who has insured his own life may, without any injury to society, of his own volition enter into a contract with others who have no insurable interest in his life, by which those who survive the five-year period shall be benefited by a distribution of part of the death claims paid on the policies of those who have died within the period. No suggestions of bad faith, sharp practices or moral turpitude are made or involved in the case before us, nor is any question raised concerning the validity of the life insurance itself.

There is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. The public policy of a State or nation is to be found in its constitution and statutes, and when cases arise concerning matters upon which they are silent then in its judicial decisions and the constant practice of government officials. (*Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180, and cases cited.) Authorities generally agree that a contract is not void as against public policy unless it is injurious in some way to the interests of society;

(13 Corpus Juris, 427; *Steen* v. *Modern Woodmen,* 296 Ill. 104;) and for the same reason our laws will not permit individuals to obligate themselves by a contract either to do or not to do anything when the thing to be done or omitted has a tendency to be injurious to the public or against the public good. *People* v. *Chicago Gas Trust Co.* 130 Ill. 268.

Public policy has universally found expression in judicial decisions refusing to allow life insurance to be taken out in the first instance by persons having no interest in the life of the insured. In accordance with these decisions it has been uniformly held that a contract of insurance upon a life in which the insurer has no interest is a pure wager, that gives the insurer a sinister counter-interest in having the life come to an end. Mr. Justice Holmes in the case of *Grigsby* v. *Russell,* 222 U. S. 149, said: "The very meaning of an insurable interest is an interest in having the life continue. * * * Indeed, the ground of the objection to life insurance without interest, in the earlier English cases, was not the temptation to murder but the fact that such wagers came to be regarded as a mischievous kind of gaming." Public policy forbids one person who has no interest in the continuance of the life of another from speculating on that life by procuring a policy of insurance. On the other hand, our courts have repeatedly held that one may insure his own life for the benefit of another having no insurable interest therein; (*Bloomington Benefit Ass'n* v. *Blue,* 120 Ill. 121; *Hawley* v. *Ætna Life Ins. Co.* 291 id. 28;) and it has also been held that one who has insured his own life may in good faith, by an assignment of the policy, provide for the payment of the insurance money to an assignee who has no insurable interest in the life insured. (*Stake* v. *Stake,* 228 Ill. 630; *Martin* v. *Stubbings,* 126 id. 387; *Hawley* v. *Ætna Life Ins. Co: supra; Grigsby* v. *Russell, supra.*) But these cases all involved the validity of the insurance contract, alone, for which the assignee had given

value, and did not present for solution any collateral agreement executed contemporaneously, from which the chief benefits to the insured depend upon the death benefits to be derived by the living members in case of the death of one or more of the other contracting parties. No case has been cited, and none can be found in this State, where the validity of a contract of this or similar nature has been passed upon by this court, but a consideration of the contract itself will enable us to determine whether it has any of the elements which bring it within the designation of a wagering contract and thus make it void as against public policy.

By the Colgrove system an applicant for life insurance is offered not only the usual indemnity, investment, savings, loan, cash surrender and other features incident to the modern life insurance policy, but is at the same time offered a contract by means of which he will be allowed to share *pro rata,* during a five-year period, in a trust fund or pool to be created by the deposit of one-fourth of the proceeds of life insurance moneys paid on account of the death of any of the other contracting members, not exceeding ninety-nine in number. The applicant, in order to share in the benefits of this contract, likewise agrees that in case of his death during the five-year period the trustee named shall deposit twenty-five per cent of the proceeds of his policy in the trust fund for the benefit of the surviving parties and pay the other seventy-five per cent to his estate or other beneficiaries named. The inducement or consideration held out to the applicant for life insurance by this method is the chance to profit, if he lives, by the early death of one or more of the other ninety-nine contracting parties, in whose lives he cannot possibly have any insurable interest. A direct financial gain is anticipated by the application of part of the insurance carried by the members who die, to help reduce the premiums on the insurance carried by those who live. The applicant thus expresses his willingness to forfeit twenty-five per cent of the insurance money which

would otherwise be paid to his own beneficiaries if he died during the first five years, for what he thinks is a better chance to live during this five-year period and participate in some of the death dividends of his contemporaries. This is nothing but speculation in human life and as such the contract is void as a wagering contract. The very basis of the scheme is a wager for personal profit—an opportunity to speculate on one's chances of outliving the other members. The trust fund created by the death of any of the contracting parties is a sum of money of which the trust company is the stakeholder, under an agreement to divide the sum among the winners, who are to be determined by the chances of life. The different contracting parties have no insurable interest in the lives of one another, and to allow them to benefit by the death of others of their number is to allow them to do indirectly by a contract what they are not allowed to do directly.

In *Warnock* v. *Davis,* 104 U. S. 924, a life insurance policy executed on the life of the deceased was held to be a valid contract and as such deemed assignable by the insured to the Scioto Trust Association as security for any sums advanced for premiums or assessments. In that case there was also a contemporaneous contract by which the trust association was to receive nine-tenths of the insurance money and the personal representatives of the insured one-tenth in case of the latter's death. The court there held that the trust association had no insurable interest in the life of the deceased and could not have taken out a policy in its own name, and in defining insurable interest said: "It is not easy to define with precision what will in all cases constitute an insurable interest so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured or from the ties of blood or marriage to him, as will justify a reasonable ex-

pectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child and a child in the life of his parent; a husband in the life of his wife and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured than any other consideration. But in all cases there must. be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured, otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are therefore, independently of any statute on the subject, condemned as being against public policy."

While the holdings of the court in *Warnock* v. *Davis, supra,* have been modified by later decisions of the same court, where, under different circumstances, an assignment by the insured to his creditors was upheld, (*Grigsby* v. *Russell, supra,*) or was not made to cover a mere speculative risk, (*Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 997,) yet the language in the case first cited, as above quoted, remains unchallenged in its general definitions of pecuniary interest and wagering contracts and is especially applicable to the contract we are now considering. Referring again to the language in *Grigsby* v. *Russell, supra,* it correctly expresses our view that the principal objection to the contract used in the Colgrove system is not so much that it offers a temptation to commit crime as that it is an inducement to speculate and gamble in human life, in which the participants occupy a position directly opposite to that of life insurance companies, all of which are primarily interested

in the continued life of each policyholder. The contract under consideration is a wager upon the lives of others in whom the parties to be benefited have no insurable interest, and the use of such a contract to promote the sale of life insurance presents an appeal to the gambling instincts of prospective policyholders that is contrary to sound principles of public policy.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*