## NORTHWESTERN MUT. LIFE INS. CO. v. TIDEWATER OIL SALES COR- PORATION et al.

No. 80.

District Court, W. D. Missouri, S. D.
Feb. 25, 1933.

Barbour & McDavid, of Springfield, Mo., for plaintiff.

Francis I. Fallon, of New York City, Y. P. Broome, of Tulsa, Okl., and Mercer Arnold, of Joplin, Mo., for defendant-interpleader Tidewater Oil Sales Corporation.

Mann, Mann & Miller, of Springfield, Mo., for defendant-interpleader Leo E. Haskett.

REEVES, District Judge.

Under its bill of interpleader, the plaintiff deposited with the clerk of this court $8,-782.33. Thereupon it asked to be discharged with its costs. Such an order was made. There remained in the fund after the payment of costs $8,150.01. Leo E. Haskett and Tidewater Oil Sales Corporation, as intervener and defendant, are contesting for the fund.

On the 3d day of February, 1926, Emmet E. Haskett was an officer (president) of Independent Oil Company, a Missouri corporation. For its protection said company caused a policy of life insurance in the sum of $10,-000 to be issued upon the life of said Emmet E. Haskett. The following language was used in designating the beneficiary: "The Northwest Mutual Life Insurance Company * * * promises to pay at its Home Office the sum of Ten Thousand Dollars * * * to Independent Oil Company, the beneficiary, its successors or assigns."

Admittedly the face amount of the policy was diminished by loans, automatic or otherwise, so as to reduce the amount to the sum deposited. The premiums on the policy were paid for the years 1926, 1927, and 1928. Subsequent premiums were paid under a provision of the policy which permitted the company to charge the premium as a loan against it.

The insured died January 27, 1931. At the time of his death the insured had retired as an officer (president) of Independent Oil Company.

Leo E. Haskett was the son of Emmet E. Haskett, the insured. They owned and controlled a major part of the stock of the Independent Oil Company. On January 25, 1929, the Ozark Oil Company, an Oklahoma corporation, was a subsidiary of the defendant Tidewater Oil Sales Corporation. On that date, it entered into two contracts with Leo E. Haskett in respect to the stock of Independent Oil Company. By the first contract the said Haskett, as the owner of fifty

shares of stock, agreed to obtain control of all of the issued and outstanding capital stock of said company, and that for a consideration stipulated therein he agreed to transfer said stock to the said Ozark Oil Company. It was stipulated that certain of the assets of Independent Oil Company should be transferred to the said Haskett upon his agreement to assume the debts of the company.

The following is the agreement for the transfer of assets to him: "All moneys and bank balances of the Independent Oil Company, and all notes and accounts owing the Independent Oil Company up to the date of the completion of the inventory."

The other contract embodied an agreement not to enter into competitive business, and there was a further agreement in the nature of a guaranty signed by both Leo E. Haskett and E. E. Haskett.

On February 6, 1929, the contract between the parties was consummated. Leo E. Haskett delivered the stock of Independent Oil Company to the Ozark Oil Company, and, in accordance with the agreement, the board of directors authorized the transfer of assets mentioned in the contract of January 25th. All of the members of the board were present, and "The Chairman explained that the purpose of the meeting was to take the necessary action with reference to transferring the notes and accounts to Leo E. Haskett, in consideration of which Mr. Haskett had agreed to assume and pay all the debts of the Independent Oil Company that have accrued up to the 1st day of February, 1929, in accordance with the contract that he had previously made with the purchasers of the shares of stock in the Independent Oil Company."

Thereupon the board ordered a transfer to the said Haskett of "all moneys and bank balances of the Independent Oil Company and all the notes and accounts of the Independent Oil Company up to the 1st day of February, 1929."

The president and secretary were then fully authorized to prepare and execute for and on behalf of the Independent Oil Company a complete assignment to the said Leo E. Haskett of "all moneys, bank balances of the Independent Oil Company and all notes and accounts owing the Independent Oil Company up to the 1st day of February, 1929."

Concurrently, and in accordance with the order of the board, an instrument entitled "Bill of Sale" was executed. To this bill of sale were attached, as exhibits, schedules of both notes and accounts. The aggregate of accounts and notes was $19,371.50. Variation from these figures was provided for in the contract. By this bill of sale there was transferred to Leo E. Haskett "all bank balances belonging to said company on said date, (January 31, 1929) * * * and the Independent Oil Company does further assign and convey to said Leo E. Haskett all notes and accounts receivable, owing to the Independent Oil Company as at the close of business on the 31st day of January, 1929."

The policy of insurance then in force was not specifically mentioned, but Leo E. Haskett claims the benefits of said policy in virtue of the foregoing and a conversation had with an officer and agent of Ozark Oil Company with specific reference to said policy.

The conversation mentioned occurred during the negotiations for the purchase of the stock of the Independent Oil Company by the Ozark Oil Company. The policy was then among the papers of the Independent Oil Company, and the agent for Ozark Oil Company at the time asserted that the premiums on the policy involved too great an expense and outlay to continue the insurance, and that his company was no longer interested. In making up inventories, the policy was not specifically mentioned. Thereafter it was not considered as an asset of the company, and premium notices were disregarded.

After the Ozark Oil Company acquired all of the stock of Independent Oil Company, the board of directors of the latter ordered the execution of an instrument entitled "sale and transfer of assets" to the defendant Tidewater Oil Sales Corporation. This instrument was dated April 1, 1929.

The transfer was authorized at a special meeting of the stockholders of Independent Oil Company held on March 30, 1929. The resolution then adopted "authorized and directed" the officers of the company to "take such steps as may be necessary, or proper, to properly assign, transfer, and convey to Tidewater Oil Sales Corporation all of the assets of this company as at the close of business on March 31st, 1929." The defendant Tidewater Oil Sales Corporation claims the benefits of the insurance upon this assignment.

1. As postulates to a consideration of the foregoing facts, it should be stated that the policy of insurance was a contract whereby the plaintiff for a stipulated consideration agreed to indemnify the beneficiary, the Independent Oil Company, against loss occasioned by the death of its president, the insured. While the contract contained provisions for loan and surrender values at all of

the times in question, these were not made available to the parties, and therefore it stood as a contract of insurance, the maturity of which depended upon the death of the insured.

2. Neither of the parties at that time had an insurable interest in the life of the insured. However, under the authorities, the Independent Oil Company, previously having an insurable interest, could make a valid assignment or transfer to one not having an insurable interest. Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Gordon v. Ware National Bank (C. C. A.) 132 F. 444, 67 L. R. A. 550.

3. A life insurance contract may be assigned according to the usual rules of assignability of contracts. 32 C. J. § 423, p. 1240. The policy under observation could only be assigned by the Independent Oil Company, and provision was made in said policy for its transfer to "its successor or assigns."

4. By the policy nothing became due thereunder until the death of the insured. When the above-mentioned contracts were made, the insured was living. The cash surrender provision of the policy is as follows: "Upon receipt of this Policy and a full and valid surrender of all claims hereunder, without the consent or participation of the Insured, the Company will pay its then cash surrender value."

It will be observed that the cash value of the policy was never made available.

5. The benefit under the policy or the values thereof were not in the form of an account, and, according to the documentary evidence, as well as oral testimony, neither of the claimants considered anything to be due or available at the time of the several transactions mentioned. In fact, according to the evidence, it may be inferred that neither of them considered the policy in force after the default in payment of premiums. The agent for the Ozark Oil Company did not reject the benefits promised in the policy, but simply indicated that no further premiums would be paid. The transfer of the policy was not an assignment of an account, but the assignment of a benefit that might arise upon a contingency.

It was a mere possibility because, if the insured had survived, the policy by its terms would soon have expired. The accounts transferred to Leo E. Haskett, mentioned in the several contracts and resolutions of the board of directors, clearly refer to accounts then due or about to become due. At no time did it refer to the assignment of the benefits of a general contract such as is involved in this case. On the contrary, the resolution of the stockholders of March 30 authorized the transfer of all of the assets of the Independent Oil Company to the defendant Tidewater Oil Sales Corporation.

This was followed by a written transfer executed by Independent Oil Company on April 1, 1929. This instrument contained a recital that "the Independent Oil Company has granted, sold, transferred, and assigned unto the said Grantee, (Tidewater Oil Sales Corporation), all of its assets, real, personal, and mixed, and wherever situated, as the same existed on the first day of April, 1929."

The conversation between the defendant Leo E. Haskett and a representative of the Ozark Oil Company with respect to the insurance policy was by no means contractual. It was not suggested that the policy be transferred to the defendant Haskett. The agent of the Ozark Oil Company merely expressed an unwillingness to continue the payment of premiums on the insurance. It was indicated that his company did not desire to augment the benefits of the policy, but at no time did he repudiate for his company the benefits already accrued. Moreover, if the conversation should be given a contractual construction, the parties are bound by the terms of the contract actually entered into as a result of such negotiations.

The bill of sale to the defendant Haskett described accurately and clearly all of the assets and things of value transferred to him. The insurance contract was not included, nor, by the most liberal construction, was there any language broad enough to include it.

The policy provisions contemplated that all assignments should be in writing. The assignment from the Independent Oil Company to the Tidewater Oil Sales Corporation was broad enough to include the contract of insurance.

The defendant Haskett testified that he made no demand upon the plaintiff for the payment of any values under the policy. Neither did the defendant Tidewater Oil Sales Corporation make such demand. The result was that the company automatically adjusted the terms of the policy so as to place the contract upon extended insurance. This meant that the policy would expire within a limited time.

It was a mere contingency or possibility

that the policy would ever mature for payment. All depended upon the continuing life of Emmet E. Haskett. When he died, the contract matured, and, as the benefits were payable to Independent Oil Company, or its assigns, the defendant Tidewater Oil Sales Corporation, being the assignee of the Independent Oil Company, is clearly entitled to the amount due.

By the comprehensive transfer to Tidewater Oil Sales Corporation, the contract of insurance was included. Therefore it must follow that the Tidewater Oil Sales Corporation is entitled to the proceeds of the insurance now in the hands of the clerk of this court. Counsel for said company will prepare an appropriate decree, and upon the presentation of a proper order said fund will be paid over to it.