In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 16-1049

SUN LIFE ASSURANCE CO. OF CANADA,

*Defendant-Appellant*,

*v.*

U.S. BANK NATIONAL ASSOCIATION, as Securities
  Intermediary,

*Plaintiff-Appellee*.

---

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14 CV 562 — **William M. Conley**, *Chief Judge*.

---

ARGUED SEPTEMBER 20, 2016 — DECIDED OCTOBER 12, 2016

---

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. A common law principle that so far
as we know is in force in every state of the United States for-
bids a person to own an insurance policy that insures some-
one else's life unless the policy owner has an insurable inter-
est in that life. *Ohio National Life Assurance Corp. v. Davis*, 803
F.3d 904, 907–08 (7th Cir. 2015). So you are allowed to own
an insurance policy on your spouse's life because the death

of the spouse is likely to impose costs on you, but you cannot own an insurance policy on the life of a stranger who you happen to know is in poor health and likely to die soon; for cashing in such an insurance policy would give you a pure windfall. (It would also, see *id.* at 906, hurt the insurance company by shortening the period in which it would be receiving premiums.) As the Supreme Court long ago sensibly remarked, "It is well settled that a man has an insurable interest in his own life, and in that of his wife and children; a woman in the life of her husband; and the creditor in the life of his debtor. … The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest." *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460 (1876).

And there is the further concern, which figured largely in the creation of the common law principle, that insuring a stranger's life gives the policy holder an incentive to shorten that life. See, e.g., *Grigsby v. Russell*, 222 U.S. 149, 154–55 (1911) (Holmes, J.).

The common law remedy for buying a life insurance policy without having an insurable interest in the life of the insured was to invalidate the policy. But in 1975 the Wisconsin legislature, while retaining the common law principle forbidding the purchase of a life insurance policy by one who lacked an insurable interest, changed the remedy from cancelling the policy to requiring the insurer to honor its promise. The revised statute provides that "no insurance policy is invalid merely because the policyholder lacks insurable interest … but a court with appropriate jurisdiction may order the proceeds to be paid to someone other than the person to

whom the policy is designated to be payable, who is equitably entitled thereto." Wis. Stat. § 631.07(4). The legislature reasoned that "the best way to discourage insurers from issuing insurance policies to persons without insurable interest is to make them [the life insurance companies] pay if they do, not to permit them freely to issue such policies knowing that they have a good public policy defense [the unenforceability of gambling contracts] that lets them off the hook whenever a loss occurs." Wis. Stat. § 631.07(4), comment.

In 2007 an insurance company named Sun Life (the defendant in this case and the appellant in this court) issued a $6 million policy on the life of a wealthy 81-year-old named Charles Margolin. He died in 2014. U.S. Bank (the plaintiff in this suit and the appellee in this court) had bought the policy three years before Margolin's death, becoming the policy's beneficiary. U.S. Bank is designated in the caption as a securities *intermediary*, however, because Margolin's policy either is a security or has been bundled together with other life insurance policies to create a security or securities, and because U.S. Bank bought the policy as an intermediary on behalf of another investor. See Jenny Anderson, "Wall Street Pursues Profit in Bundles of Life Insurance," *New York Times*, Sept. 5, 2009, www.nytimes.com/2009/09/06/business/06ins urance.html?_r=1 (visited Oct. 11, 2016).

Sun Life declared that it would refuse to pay U.S. Bank the policy proceeds until it investigated the policy's validity. That refusal, should it ripen from tentative to definitive upon completion of the investigation, would be profitable because during the seven years that the policy was in force Sun Life had collected and retained almost $2.5 million in premiums paid by the successive owners of the policy. And even if

Sun Life was ordered to return the premiums, see *Venisek v. Draski*, 150 N.W.2d 347, 353–54 (Wis. 1967), it would save $6 million if it didn't have to pay U.S. Bank the policy proceeds. Reacting to Sun Life's declaration and armed by Wisconsin's requirement that insurers in Wisconsin pay claims within 30 days, Wis. Stat. § 628.46, U.S. Bank brought this diversity suit against Sun Life, and prevailed in the district court; the district judge ruled that the bank was entitled to the policy proceeds—the $6 million—plus statutory interest and "bad faith" damages for Sun Life's foot dragging.

U.S. Bank insists that Wis. Stat. § 631.07(4) requires Sun Life to pay the death benefit to the beneficiary of the policy, namely U.S. Bank. It is true that the statute authorizes the court to order the death benefit paid to someone else, but only to a someone else who is equitably entitled to it. And no one who is equitably entitled to the proceeds of the Sun Life policy has stepped forward to claim them; therefore the beneficiary, U.S. Bank, is entitled to them.

Against this Sun Life makes three arguments. One is that its refusal to pay the death benefit is authorized and in fact compelled by another Wisconsin statute, Wis. Stat. § 895.055, which with immaterial exceptions voids all gambling contracts. But still another statutory provision, Wis. Stat. § 600.12(2), provides that if a section of the state's insurance code conflicts with a section of another code, the section in the insurance code governs. Wis. Stat. § 631.07(4), the section under which U.S. Bank is suing, is a provision of that code, as the code encompasses chapters 600 to 655 of the Wisconsin statute book and sections 600.12(2) and 631.07(4) are both within that range. Sun Life argues that the two statutes don't actually conflict, but the distinction it tries to draw, between

insurance policies that are wagers and insurance policies in which the policyholder lacks an insurable interest, does not exist. As explained in *Grigsby v. Russell, supra,* 224 U.S. at 154, "a contract of insurance upon a life in which the insured has no interest is a pure wager." Nevertheless Wis. Stat. § 631.07(4) makes clear that as the beneficiary of the policy U.S. Bank is entitled to the proceeds of it.

Sun Life's second argument is grounded in Article IV, section 24, of the Wisconsin Constitution, which states that "except as provided in this section, the [Wisconsin] legislature may not authorize gambling in any form." But the legislature has not done that in Wis. Stat. § 631.07(4), or anywhere else for that matter. Gambling contracts, including life insurance policies that lack an insurable interest, are still forbidden. The statute changed only the remedy for violation, from invalidation of the policy to requiring the insurer to cough up the proceeds rather than—as Sun Life claims entitlement to—being allowed to keep all the premiums and pay nothing to the policy holder because the latter had no insurable interest in the policy.

Sun Life's third argument is limited to the district judge's award of statutory interest, and of damages for acting in bad faith. The statute we cited earlier that requires payment of insurance proceeds within 30 days requires interest on delayed payments at the rate of 12 percent a year unless the insurer has "reasonable proof," lacking here, that it does not have to pay the claim. Wis. Stat. § 628.46. And bad faith, which requires showing that the insurer lacked a "reasonable basis" for the delay and acted with "knowledge or reckless disregard" of the lack, *Anderson v. Continental Ins. Co.,* 271 N.W.2d 368, 376 (Wis. 1978), has been proved as well.

The judgment of the district court is

AFFIRMED.